Estate of F. Herman Gade, Deceased, The Northern Trust Company, Executor, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 13603. Promulgated April 6, 1948.

*John R. Heath, Esq.*, and *William Burry, Esq.*, for the petitioner.
*John D. Kiley, Esq., Lewis S. Pendleton, Esq.*, and *Jackson L. Boughner, Esq.*, for the respondent.

OPINION.

Opper, *Judge*: In this proceeding respondent determined a deficiency of $8,110.87 in estate tax of the estate of F. Herman Gade,

hereinafter referred to as decedent. A claim for an increased deficiency has been made by respondent, to be adjusted in the computation under Rule 50.

A question as to the fair market value of decedent's interests in certain realty having been settled by stipulation, the sole remaining issue is whether funds of decedent held by a Chicago bank under an agency agreement are excluded from decedent's gross estate as "moneys deposited * * * by or for" decedent with a bank, within the meaning of section 863 (b) of the Internal Revenue Code.

All of the facts have been stipulated, or admitted by the pleadings, and are hereby found accordingly. For purposes of this proceeding, they may be summarized as follows:

Decedent, who died on February 19, 1943, was a nonresident alien individual, and at all times material resided near Paris, France.

The Northern Trust Co., hereinafter sometimes referred to as the "bank," is a corporation organized under the Illinois banking laws, and is engaged in the business of a bank and trust company in Chicago. It is executor of decedent's will.

Under date of April 20, 1940, decedent and the bank entered into an agreement entitled "Agency Agreement," in which decedent was designated as the "Owner" and the bank as the "Company." Under its terms, the bank was appointed "agent and custodian" for decedent of certain securities and investments which were delivered to it by decedent. The bank was to collect the income and principal on the securities and investments. The net income was to be distributed, as follows: "Hold subject to owner's instructions."

Until the death of decedent, the bank held all the securities as his agent under the agency agreement, collected income and principal payments in respect thereof for decedent as his agent, and made disbursements, as agent for decedent, from the funds to his credit, of various sums in payment of taxes, expenses of management of the property, and charges for its services as agent in the sum of $450 per year.

No interest was paid to decedent on the cash balance to his credit.

The only instructions which were given as to the handling of the funds held by the bank were to invest the cash and to pay decedent $250 monthly. The bank complied with the request to pay out $250 monthly through November 1941, after which remittances were no longer possible because of the United States Government's prohibition of the transfer of funds to persons residing in enemy-occupied territory.

As a result, on February 19, 1943, the bank was holding for decedent in cash the sum of $84,691.54, which exceeds by $206.23 the amount included in the deficiency notice, and respondent has made claim for increased deficiency resulting therefrom.

The activities of the bank under the agency agreement were carried on primarily by its trust department. The trust department of the bank is charged with the duty of handling all accounts in which the bank is acting as agent or trustee. The banking department of the bank maintains facilities to handle ordinary commercial accounts. All funds which the bank is holding as agent or trustee are delivered by the trust department to the banking department, and are entered on the books of the banking department to the credit of one account, entitled "Trust Department." The balance in this account is carried on the balance sheet of the bank under an account entitled "Demand deposits of individuals, partnerships, and corporations." The banking department commingles with its other funds all amounts received from the trust department in the sense that the currency, specie, checks, and other evidence of amounts due are in no way segregated. The "Trust Department" account in the banking department was not secured by the setting aside of collateral securities.

Prior to the freezing of bank accounts due to the war, a check written by decedent would have been honored had it been presented for payment, even if decedent had had no technical checking account.

All of the receipts and disbursements were detailed in an account in the bank's cash ledger, captioned "Agent for F. Herman Gade," comprising over 60 sheets. Periodic statements of all receipts and disbursements were required to be made by the bank to decedent.

In the notice of deficiency, respondent:

\* \* \* determined that the amounts held on February 19, 1943, by The Northern Trust Company, Chicago, Illinois, pursuant to the agreement dated April 20, 1940 with F. Herman Gade, are properly includible in the gross estate of the decedent under Section 811 Internal Revenue Code, and that said amounts were not "moneys deposited with any person carrying on the banking business" within the meaning of Section 863 (b) of the Internal Revenue Code.

If the applicable provision of the estate tax law is to be read literally, petitioner's situation falls squarely within it, and the claim to exclusion will consequently require approval. The provision in question reads as follows:

SEC. 863. PROPERTY WITHOUT THE UNITED STATES.

The following items shall not, for the purpose of this subchapter, be deemed property within the United States:

\* \* \* \* \* \* \*

(b) BANK DEPOSITS.—Any moneys deposited with any person carrying on the banking business, by or for a nonresident not a citizen of the United States who was not engaged in business in the United States at the time of his death.

The property in dispute is money; it was deposited with a person carrying on the banking business; and the decedent by or for whom it was on deposit was not a citizen of the United States and was not engaged in business here at the time of his death.

And if we reach beyond the surface language and seek out the

objective at which the legislation was aimed, we likewise find that application of the exclusion to estates of persons in decedent's position is equally indicated. The legislative purpose, as manifested when the provision was adopted, was to place American banks in a competitive position with those abroad in their activities carried on for foreigners. S. Rept. 275, 67th Cong., 1st sess., p. 25. Limiting application to the deposit of funds in conventional savings or checking accounts, and excluding the comparable relationship of cash in a custody or management account would fall far short of accomplishing this statutory objective. If foreign investors are deterred from placing funds in bank accounts by the fear that the property will be subjected to estate tax in the United States, the effect would presumably be similarly adverse in respect of funds subject to decedent's order but growing out of arrangements calling for custody or management.

Only by attributing to the word "deposit" a narrow and technical meaning, entirely at variance with the remaining language of the section and with its declared spirit, is there ground for denying the claimed exclusion. Nothing in the authorities to which we have been referred appears to call for any such treatment.

In *Estate of Forni*, 47 B. T. A. 76, where decedent maintained an "agency account" with a trust company, cash accumulations credited to decedent were commingled and deposited with another bank, and checks drawn by decedent on the trust company were honored by it, rather than by the depositary bank, we rejected inclusion, considering it unnecessary "to determine whether there was legal or legislative justification for respondent's action in interpreting the statute narrowly." In *City Bank Farmers Trust Co.* v. *Pedrick* (Dist. Ct., S. Dist. N. Y.), 69 Fed. Supp. 517, where a concededly fiduciary relationship existed but the trustee bank deposited cash awaiting investment with its own banking division, as in the present case, the court said:

* * * the inquiry then must turn to the question of whether they [American banks] are to be any the less favored, where the deposit is made pursuant to the terms of an inter-vivos trust, than would be the case of a deposit made by an individual. I can see no difference, so far as the maintenance of the competitive position of banks is concerned.

And in *Burnet* v. *Brooks*, 288 U. S. 378, where a relationship in the nature of a custody account comparable to that present here led to the deposit of cash collections in a checking account in decedent's name with the custodian, the Supreme Court referred to "the exclusion from the gross estate of bank deposits in this country, in the circumstances stated; deposits which, as constituting property of nonresidents situated in the United States, had theretofore been subject to the estate tax. The Congress evidently thought it necessary to make this express exception, in order to exclude such deposits from the tax * * *."

The only case cited by respondent which deals with the definition of the term "deposit" in a Federal tax statute is *Magruder* v. *Safe Deposit & Trust Co. of Baltimore* (C. C. A., 4th Cir.), 121 Fed. (2d) 981. There the court described its "interpretative technique" as what "might be called a practical, commercial, functional approach," which it considered "preferable * * * rather than to base our decision on mere analytical or purely verbal analyses of the terms used in the statutes." It concluded that the provisions of section 117 (d), relieving banks of the capital loss limitation, did not apply to a trust company because it did not habitually receive "deposits." But in a case decided by the same court only a short time previously, and in which it assertedly had adopted a similar technique, the conclusion was reached that a loan company was engaged in the business of receiving deposits "specifically termed 'investments,' " it having "no authority to accept deposits subject to check," although, as here, checks would have been honored if drawn. That opinion quotes with approval an excerpt from *Oulton* v. *German Savings & L. Soc.*, 84 U. S. 109:

* * * Originally the business of banking consisted only in receiving deposits, such as bullion, plate, and the like, for safe-keeping until the depositor should see fit to draw it out for use * * *.

*Staunton Industrial Loan Corporation* v. *Commissioner* (C. C. A., 4th Cir.), 120 Fed. (2d) 930, 933, 934. The only other Federal case cited by respondent defining the term "deposits" is one construing the Federal Reserve Act, obviously a technical statute operating in a limited field. *Pascagoula National Bank* v. *Federal Reserve Bank of Atlanta* (Dist. Ct., N. Dist. Ga.), 3 Fed. (2d) 465; affd. (C. C. A., 5th Cir.), 11 Fed. (2d) 866; certiorari denied, 271 U. S. 685.

No contention is advanced that these sums were not deposited "by or for" the decedent, cf. *Estate of Elizabeth Hawxhurst Davey*, 10 T. C. 515, probably for the entirely adequate reason that the relationship here is one of agency and not a trust. *Estate of Karl Weiss*, 6 T. C. 227. We find it unnecessary to decide whether this was technically a "general" or "special" deposit and whether respondent is to any extent correct in his contention that there are some relationships between bank and customer which are so far removed from the common usage of the term "deposit" as to be evidently excluded from the field which the section was intended to cover. This case at least seems to us not to present such characteristics and, on the whole, to be controlled by *Estate of Forni, supra; City Bank Farmers Trust Co.* v. *Pedrick, supra;* and *Burnet* v. *Brooks, supra*. On their authority, and for the reasons stated, we think the provisions of section 863 (b) require that the property in dispute be excluded from the estate.

Reviewed by the Court.

*Decision will be entered under Rule 50.*