KEN-RAD TUBE & LAMP CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

KEN-RAD TRANSMITTING TUBE CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 11746, 11747.   Promulgated June 28, 1948.

*James E. Fahey, Esq.*, for the petitioners.
*Clarence E. Price, Esq.*, for the respondent.

OPINION.

VAN FOSSAN, *Judge*: The respondent contends that the petitioner is not entitled to amortization of emergency facilities based upon the shortened period under section 124 (d) (1) of the Internal Revenue

Code[1] for the reason that such facilities were not owned by either petitioner or its parent corporation as of September 29, 1945, the date of the termination of the emergency period as proclaimed by the President of the United States.

It is contended by petitioners that there is nothing in the law or regulations to indicate that the amount of amortization which the statute allows under proper election during the year the facility is held by the taxpayer is to be affected by the disposal of the property or facility in a subsequent year. They further contend that Mimeograph No. 5957,[2] promulgated December 12, 1945, C. B. 1945, pp. 181, 184, is not a proper interpretation of section 124 (d).

The facts are not in dispute. They are in brief as follows: The petitioner was organized by Ken-Rad Tube & Lamp Corporation, which received and held all issued and outstanding stock of petitioner. Substantially all of petitioner's assets were covered by certificates of necessity. It engaged in the manufacture of transmitting tubes, for which the war created a great demand, until June 30, 1943, when it transferred all of its assets to its parent corporation. Although there is no direct evidence on the point, the reasons given for the transfer indicate that the parent corporation continued the manufacture of transmitting tubes until January 2, 1945, when it sold all the assets transferred to it by petitioner at a profit. In petitioner's brief it is stated that such sale was made to the General Electric Co. In its returns for the periods involved, petitioner elected to amortize the cost of its emergency facilities on the basis of a 60-month period and on such basis deducted amortization of $40,610.77 for the year 1942 and $37,689.28 for the period ended June 30, 1943. On December 28, 1945,

---

[1] SEC. 124. AMORTIZATION DEDUCTION.

\* \* \* \* \* \* \*

(d) Termination of Amortization Period.—

(1) If the President has proclaimed the ending of the emergency period (as defined in subsection (e)), or if the Secretary of War or the Secretary of the Navy has, in accordance with regulations prescribed by the President, certified to the Commissioner that an emergency facility ceased, on the date specified in the certificate, to be necessary in the interest of national defense during the emergency period, and if the date of such proclamation or the date specified in such certificate occurs within sixty months from the beginning of the amortization period with respect to such emergency facility, then the taxpayer may elect (in accordance with paragraph (4) of this subsection) to terminate the amortization period with respect to such emergency facility as of the end of the month in which such proclamation was issued or in which occurred the date specified in such certificate, whichever is the earlier. In such case the amortization period with respect to such facility shall end with the end of such month in lieu of the end of the sixty-month period.

[2] The portion of Mimeograph 5957 referred to is as follows:

"Facilities which were sold or abandoned prior to September 29, 1945, the date of termination of the emergency period, or prior to the date specified in a non-necessity certificate, as the case may be, are not subject to amortization over the shortened period provided in section 124 (d) of the Code because their use as emergency facilities was terminated by reason of such sale or abandonment. Under such circumstances, the adjusted basis for gain or loss at the date of sale or abandonment must be determined without reference to the shortened emergency period provided in section 124 (d). If the facilities were not sold before September 29, 1945, they are subject to amortization over the shortened period even though subsequently sold either before or after the date of the notice of election."

after the President had declared termination of the emergency period as of September 29, 1945, and after the sale of the emergency facilities by the parent transferee, the petitioner, in a letter addressed to the Commissioner, elected to use new amortization deductions for the year 1942 and the period ended June 30, 1943, based on the shortened period ended with the month of September 1945, in which the President's proclamation was made, in lieu of the end of the 60-month period. It claims additional amortization deductions of $19,577.21 and $20,136.52, or a total of $39,713.73, for 1942 and the period ended June 30, 1943.

In our opinion, the statute itself precludes a decision in petitioner's favor. Section 124 (d) (4) provides that, when the election provided in paragraph (1), (2), or (3), as the case may be, has been made, then:

   * * * under regulations prescribed by the Commissioner with the approval of the Secretary, the taxes for all taxable years, beginning with the taxable year in which the amortization period began, shall be computed in accordance with an amortization deduction computed in accordance with the method provided in subsection (2), but using (in lieu of the sixty-month period provided in such subsection) the amortization period specified in paragraph (1), (2), or (3), as the case may be.

Section 124 (d) (4) provides for the method to be used to give retroactive effect taxwise to a change in the computation of a deduction for amortization of emergency facilities in accordance with paragraph (1), (2), or (3), as elected by the taxpayer. The petitioner made its election under paragraph (1), i. e., to use, in the computation of amortization, the shorter period ended September 30, 1945, in lieu of the 60-month period it had used in computing its deductions for amortization for the taxable year 1942 and the taxable period January 1 to June 30, 1943.

To determine the benefit, if any, to which the person making an election under paragraph (1), (2), or (3), is entitled, section 124 (d) (4) provides the method to be used. Clearly, it requires more than the computation of the amortization deduction with respect to each month of a 60-month period within the taxable year as provided in subsection (a). It requires that "the taxes for all taxable years, beginning with the taxable year in which the amortization period began" shall be computed with an amortization deduction based upon the newly elected amortization period ended September 30, 1945, in lieu of the previously elected period of 60 months. In other words, it requires the recomputation of the *taxes for all the taxable years* in which the newly elected amortization period falls, i. e., recomputation of the taxes for the years 1942 to 1945, inclusive. Thus it requires the adjustment retroactively of the amortization deduction for the entire amortization period.

This the petitioner has failed to do and can not do, since it disposed of all its assets as of June 30, 1943, and was dissolved. As stated in *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435:

\* \* \* Whether and to what extent deductions shall be allowed depends upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed. \* \* \* a taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within its terms.

Not being able to bring itself within the terms of the statute, it is not entitled to its benefit.

There are additional reasons for the disallowance of the deductions claimed.

The purpose behind the enactment of section 124 was to permit those who invested in emergency facilities "to amortize the cost thereof over a shorter period than would be permitted under the depreciation provisions of the Internal Revenue Code." Committee on Ways and Means Report No. 2894 [3] (C. B. 1940–2, pp. 496, 507-8). It is apparent that the primary purpose for the enactment of section 124 was to permit the recovery, by way of amortization, of investments in emergency facilities, by those who would suffer an economic loss at the end of the emergency period because the use of such facilities would end with the termination of the emergency period. The same principle is applicable to allowances for depreciation. In *Edith Henry Barbour*, 44 B. T. A. 1117, 1121 (reversed on another point), we stated as follows:

\* \* \* While ownership may not be a prerequisite to the right to a depreciation deduction, see *Helvering* v. *Lazarus & Co.*, 308 U. S. 252, it is conversely true that not even ownership necessarily entitles the owner to deduct depreciation. The test is whether the claimant to depreciation is in such a position as to suffer an economic loss as a result of the decrease in value of the property due to the depreciation. *Weiss* v. *Wiener*, 279 U. S. 333; *Atlantic Coast Line Railroad Co.*, 31 B. T. A. 730; affd. (C. C. A., 4th Cir.), 81 Fed. (2d) 309; certiorari denied, 298 U. S. 656. \* \* \*

Section 124 (a) makes the basis for amortization the same as the basis would be for the computation of gain. The adjusted basis for determining gain is cost, with exceptions not here applicable. Sec. 113 (a) and (b). Thus the adjusted basis of petitioner at the time of the transfer of its emergency facilities to its parent corporation was cost to it, less the amortization allowances on the basis of a 60-month period. The transfer was treated as a transfer in liquidation under section 112 (b) (6) of the Internal Revenue Code, and accordingly,

---

[3] The extension of existing facilities is a necessary and vital part of the national defense program. To obtain the needed facilities will require the investment of hundreds of millions of dollars. Your committee has been informed by the Advisory Commission to the Council of National Defense that substantial amounts of private capital will not be invested in the construction of such facilities unless corporations are assured, in view of the fact that such facilities will be of use chiefly only during the period of national emergency, that they will be permitted to amortize the cost thereof over a shorter period than would be permitted under the depreciation provisions of the Internal Revenue Code.

the basis to the parent corporation was the same as it was in the hands of petitioner, the transferor. Section 113 (a) (15) of the Internal Revenue Code. It is reasonable to assume that the parent corporation, in its returns, claimed and was allowed amortization on the basis of a 60-month period from June 30, 1943, up to the time of the sale on January 2, 1945. Mimeograph 5957, C. B. 1945, pp. 181, 187.[4] All inferences support this assumption and there is no evidence to the contrary. Since the sale occurred prior to September 29, 1945, the date of the termination of the emergency period as proclaimed by the President's proclamation, it is also reasonable to assume, there being no evidence to the contrary, that, in the computation of its gain realized on the sale of the emergency facilities involved, the parent corporation did not reduce its basis by a greater amortization allowance than that based upon a 60-month period. The parent corporation having realized a gain on the sale, it is obvious that it recovered any unamortized portion of its basis from the purchaser of the facilities. Thus the entire adjusted basis of the emergency facilities involved was recovered. Under the statutes, the cost bases of petitioner and its transferee are the same. By a nontaxable transfer no new cost basis is established for the transferee. Under the circumstances here, there is but one investment, the adjusted basis of which petitioners are entitled to amortize under section 124.

To allow the additional amortization under the circumstances herein would not be the mere granting of the relief contemplated by section 124, as argued by petitioners. Although petitioner on brief argues much about the equities of the case, it is not shown that they will sustain an economic loss unless additional amortization is allowed to petitioner. On the contrary, to allow the additional amortization would result in substance and effect in the realization by the parent corporation, petitioner's transferee, of additional gain to the extent of the reduction in taxes resulting from the deduction of the additional amortization claimed. Section 124 was not intended to be utilized for such purpose.

To disallow the claimed additional amortization under the circumstances herein does not result in discrimination between a taxpayer who transferred emergency facilities immediately prior to September 29, 1945, and one who transferred such facilities immediately after that date, as argued by petitioner. In neither case would the taxpayer be entitled to recover more than its adjusted basis of its investment in such emergency facilities. Any return in excess thereof by subsequent sale would be gain and taxable as such.

---

[4] Mim. 5957 provides, in part:

"Generally, the [necessity] certificate issued to a transferor will be recognized in the hands of the transferee if the transfer was made in a nontaxable transaction under section 112 (b) of the Code."

The only case cited by petitioner as supporting its position is *Union Bleachery* v. *United States*, an unreported decision of the United States District Court for the Western District of South Carolina entered January 18, 1933. The taxpayer brought action to recover income and profits taxes of its transferor for the years 1916 to 1919, inclusive. The taxpayer, on July 1, 1922, acquired in exchange for its stock certain facilities for the production of war material, the cost of which was $76,468.57. Only five of such facilities, costing $12,128.66, were abandoned or sold during the postwar period and the remaining facilities were continued in full use and with respect to which no loss was sustained. Of the five facilities, three were abandoned and had no salvage value and two were sold at a price less than depreciated cost basis. It was held by the court, as admitted by defendant, that the taxpayer was entitled in 1918 to the additional allowance of amortization of the difference between salvage value or selling price and the cost of the facilities reduced by the depreciation theretofore allowed. Thus the taxpayer was permitted to recover the cost of such facilities by way of depreciation or amortization only to the extent not recovered by the selling price. This case affords little aid to petitioner.

It is our conclusion that under the circumstances herein the respondent did not err in disallowing the additional amortization claimed for the year 1942 and the period ended June 30, 1943.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*