ESTATE OF ANNA FLOTO DE EISSENGARTHEN, J. HUTTON HINCH, ANCILLARY ADMINISTRATOR C. T. A., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15545. Promulgated June 30, 1948.

*Marvin Lyons, Esq.*, for the petitioner.
*Whitfield J. Collins, Esq.*, for the respondent.

OPINION.

BLACK, *Judge*: The Commissioner has determined a deficiency in estate tax against the estate of Anna Floto de Eissengarthen in the sum of $2,345.38. Among the adjustments made by the Commissioner in the determination of this deficiency was adjustment (a), which is explained in the deficiency notice as follows:

It is held that the cash balance of $16,190.07 in a custodian account at Guaranty Trust Company, New York, New York, reported in item 15, Schedule I, of the return, but not returned for tax, is includible in decedent's gross estate under the provisions of Section 811 (a) of the Internal Revenue Code and is not excludible under Section 863 (b) of the Internal Revenue Code.

Petitioner, by an appropriate assignment of error, contests this adjustment. Petitioner does not contest the other adjustments made by the Commissioner.

The facts have been stipulated and may be summarized as follows:

J. Hutton Hinch is the duly constituted ancillary administrator c. t. a. of the estate of Anna Floto de Eissengarthen. The Federal estate tax return of the estate was filed with the collector of internal revenue for the second district of New York.

Anna Floto de Eissengarthen (herein referred to as the decedent), died on May 29, 1942, a resident of and domiciled in Montreux, Switzerland, and a citizen of Chile. The decedent was not at any time engaged in business in the United States.

Jean Eissengarthen, son of Anna, died on November 6, 1941. On the date of his death he was a citizen of Switzerland and a resident of and domiciled in Montreux, Switzerland. On the date of his death he had cash on deposit in a checking account with Guaranty Trust Co. of New York in the amount of $15,344.85. Guaranty Trust Co. of New York is a corporation, carrying on the banking business.

This checking account had been opened by Jean on March 10, 1939, in the amount of $23,070, representing funds received by Guaranty Trust Co. of New York from Union Bank of Switzerland, Montreux, Switzerland, for the account of Jean Eissengarthen. On March 15, 1939, Jean entered into a custody agreement for the safekeeping of his securities with the Guaranty Trust Co. of New York which provided that income and principal payments from such securities were to be credited to his checking account. Between November 6, 1941, and May 29, 1942, dividends and interest collected on securities held in this custody account were credited to the checking account, the title of which had been changed to "Dr. Jean Eissengarthen, deceased," so that on May 29, 1942, the cash in that account amounted to $16,190.07. This checking account was maintained in the name of Dr. Jean Eissengarthen, deceased, until April 18, 1944, when the balance was transferred to the account of J. Hutton Hinch, temporary ancillary administrator of the estate of Jean Eissengarthen.

In and by his last will and testament, Jean bequeathed all his property to the decedent, appointing her as his sole heir. No executor was named in the will. On March 26, 1942, the Justice of the Peace of the District of Montreux, Switzerland, to whom jurisdiction in that behalf belonged, issued to the decedent a certificate of inheritance certifying that the decedent was the sole heir designated in the last will and testament of Jean Eissengarthen and that such will did not appoint any testamentary executor. Under the law of Switzerland at all times material herein, upon the death of a decedent the property of the decedent becomes, by force of law, as of the date of his death, the property of the person or persons appointed by his last will and testament as his heir or heirs, and the debts of the decedent become the debts of such heir or heirs, subject to the right of such heir or heirs

to renounce the inheritance within three months after the date of death. The decedent did not renounce her inheritance from Jean.

At the date of death of the decedent, no ancillary administrator or other representative of the estate of Jean had been appointed in any jurisdiction and no petition for such appointment had been filed in any jurisdiction. J. Hutton Hinch was granted ancillary letters of temporary administration on the estate of Jean by the Surrogate of New York County, New York, on April 29, 1943, and was granted ancillary letters of administration c. t. a. on the estate on June 28, 1946.

There were no known creditors of Jean residing in the State of New York on or after the date of his death. J. Hutton Hinch, as ancillary administrator c. t. a., filed his final account, sworn to March 11, 1947, with the Surrogate of New York County on December 3, 1947, which account included the balance of the checking account formerly in the name of Dr. Jean Eissengarthen, deceased. This final account was judicially settled by a decree of the Surrogate's Court of New York County entered January 8, 1948. It was stated in the final account that no claims of creditors of Jean Eissengarthen had been presented or paid and that none had come to the knowledge of the ancillary administrator. In January 1948, subsequent to the entry of the above decree, J. Hutton Hinch, as ancillary administrator c. t. a. of the estate of Jean Eissengarthen, made payment in accordance with the order of the decree of the balance of the account remaining in his hands to Marius Lederrey, domiciliary executor of the last will and testament of the decedent.

The parties are in agreement as to the facts of the instant case. They are in disagreement as to the proper application of section 863 (b) of the Internal Revenue Code. That provision of the code reads as follows:

SEC. 863. PROPERTY WITHOUT THE UNITED STATES.

The following items shall not, for the purpose of this subchapter, be deemed property within the United States:

* * * * * * *

(b) BANK DEPOSITS.—Any moneys deposited with any person carrying on the banking business, by or for a nonresident not a citizen of the United States who was not engaged in business in the United States at the time of his death.

It is agreed that at the time of the death of decedent she was a nonresident alien and not engaged in business in the United States. It is also agreed that the $16,190.07 in question was a bank deposit within the meaning of section 863 (b) and that it was not deposited by decedent, but was deposited by her son Jean in his lifetime and was owned by him at the time of his death, which occurred several months prior to the death of his mother, the decedent herein. While pe-

titioner concedes that the $16,190.07 was not deposited by decedent, nevertheless, petitioner contends that at the date of decedent's death the amount was on deposit *for* her within the meaning of the statute in question. Respondent, on the other hand, contends that, although this sum of money was the property of the decedent, it was not money deposited by or for her and should be considered property within the United States and thus includible in her estate. Respondent further maintains that after the death of Jean the balance of his checking account with the Guaranty Trust Co. was held by the bank for the benefit of the ancillary administrator of Jean, if and when appointed, and not as a deposit by or for the decedent. These respective contentions form the narrow issue which we have to decide. In *Estate of Karl Weiss*, 6 T. C. 227, we said:

* * * The words must be given their usual meaning, since no reason appears for giving them any special or restricted meaning. Congress did not describe the deposit as one in the name of the decedent or one made directly by him, nor did it mention a direct contractual relationship between him and the bank. If it had intended to limit the application of this section, as contended for by the respondent, it could have found better words to convey that thought. * * *

The use of the words "by or for" indicates that the deposit may be made by someone other than the decedent. A usual meaning of "for" when thus coupled with "by" is "for the use and benefit of" or "upon behalf of." * * *

The petitioner in its brief argues that the moneys were deposited *for* the decedent on the date of her death within the meaning of the statute as interpreted by us in the *Karl Weiss* case, *supra*, because: (1) She owned the bank account; (2) a payment of the deposited funds to her would have discharged the bank; and (3) she could have enforced her direct claim to the funds by suit in her own name. Petitioner supports the foregoing propositions by New York cases which it cites. We shall not discuss these cases in detail for reasons which presently appear.

Respondent concedes (1) above, for, in his brief, after speaking of the death of Jean, the original owner of the deposit, he says: "The mother was named as sole heir in his will, and under Swiss law all of his property became, by force of law, the property of his mother as his sole heir." Respondent also seems to concede petitioner's contention (2) above, for he admits in his brief that the Guaranty Trust Co. could have made a voluntary payment of the deposit in good faith and if the payment was made to the right person, the bank would be protected against subsequent claims. Respondent denies, however, petitioner's contention (3) above. He argues that the Guaranty Trust Co. could not have been compelled by a lawsuit to pay over the deposit to Anna without first the appointment of an ancillary administrator of Jean, and he cites certain cases which he claims support him.

There is considerable argument in petitioner's brief that under the facts of this case an ancillary administrator would not have to be appointed. We shall not endeavor to explore what the New York law is on that subject because we do not think it is decisive of the issue which we have here to decide. Whatever the New York law is on that subject, the fact remains that the Guaranty Trust Co. apparently did require the appointment of an ancillary administrator of Jean before it would pay over the money on deposit to those entitled to receive it. So, if that fact were decisive of the case, it would seem that petitioner would lose. But we do not think it is decisive.

The facts which we think are decisive are these: It has been stipulated that "Under the law of Switzerland at all times material herein, upon the death of a decedent, the property of the decedent becomes, by force of law, as of the date of his death, the property of the person or persons appointed by his last Will and Testament as his heir or heirs." And it has been further stipulated that "There were no known creditors of Jean Eissengarthen residing in the State of New York on or after the date of his death." These things being true, it follows, we think, that, immediately upon the death of Jean, Anna became the sole owner of the bank deposit in question and, notwithstanding the name of the account was not changed from "Dr. Jean Eissengarthen, deceased" to that of "Anna Floto de Eissengarthen," it immediately became her property and at all times prior to her death it was money on deposit in the United States for her use and benefit. This, we think, fulfills the requirement of the statute. Cf. *Estate of Elizabeth Hawxhurst Davey*, 10 T. C. 515; *Estate of F. Herman Gade*, 10 T. C. 585. The fact that the bank would not have paid over the money to its rightful owner without the appointment of an ancillary administrator, it seems to us, is not controlling. That was merely for the bank's protection and does not affect in any way Anna's ownership of the deposit at the date of her death.

We do not think that the recent decision of the Second Circuit in *City Bank Farmers Trust Co.* v. *Pedrick* (reversing the judgment of the District Court), 168 Fed. (2d) 618, is contrary to what we have decided above. In that case the decedent, a nonresident who died in 1940, had executed a deed by which he conveyed in trust $79,000 on deposit in a New York bank in his name. The income from the trust was successively payable to decedent and his wife, while the principal was subject to a testamentary power of appointment by the survivor. Decedent and, following his death, his wife were given the power, with the consent of the trustee, to amend or revoke the trusts created, in which event the principal was to be transferred to decedent or his wife. In giving or withholding its consent, the trustee was to consider only the interests of decedent or his wife, as the case might

be. Under these facts the Second Circuit held, reversing the United States District Court, that the bank deposit was properly includible in the gross estate and not excludible under code section 863 (b) as a deposit by or for a nonresident. The possibility that the trustee might refuse to accede to a withdrawal by decedent, in the event that the latter would be subject to undue influence, was sufficient to prevent application of the exemption statute.

We have no such facts in the instant case. Here it is clear from the facts which have been stipulated that, upon the death of her son Jean, Anna became the sole owner of the deposit in a New York bank and there were no debts owed by Jean to any New York creditor at the time of his death. Under these facts Anna was the owner in her own right of this deposit at the time of her death. It was money on deposit for her benefit and the amount should be excluded from her estate under the provision of section 863 (b) of the code. Petitioner's assignment of error is sustained.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

KERN, J., concurs only in the result.

HARRON, J., dissents.