ESTATE OF LINA JOACHIM, DECEASED, RICHARD H. JOACHIM, BENEFICIARY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 41637.   Filed July 14, 1954.

*Charles Meyer, Esq.*, and *Rene Loeb, Esq.*, for the petitioner.
*John J. O'Toole, Esq.*, for the respondent.

OPINION.

RAUM, *Judge:* The respondent determined a deficiency of $35,213.19 in estate tax of the estate of Lina Joachim, hereinafter referred to as the decedent. The issue is whether the amount of $168,361.80, which represented the sole asset in her estate, was exempt from tax under section 863(b) of the Internal Revenue Code, as moneys deposited with a bank by "or for" the decedent. All of the facts have been stipulated and are hereby found accordingly.

The decedent died May 28, 1943, in a German concentration camp. At all times material herein she was a nonresident alien, and was not engaged in business in the United States.

Max R. Bashford, a brother of the decedent, died domiciled in New York on December 27, 1935. He had established a testamentary trust with a corpus of $600,000. The income from the trust was payable to Nellie West Bashford, his wife, during her lifetime, and the remainder was to go to five persons among whom were Lina Joachim and another sister, Rosa Lesser. Nellie West Bashford died on September 18, 1941.

On July 1, 1942, the City Bank Farmers Trust Company of New York filed its account as trustee of the estate of Max R. Bashford. On July 3, 1942, James A. Foley, Surrogate of the Surrogate's Court of New York County, under the authority of section 269 of the New York Surrogate's Court Act,[1] signed a decree which contained the following provisions:

---

[1] Section 269 of the New York Surrogate's Court Act provides in part as follows:
Where it shall appear that a legatee, distributee or beneficiary of a trust would not have the benefit or use or control of the money or other property due him, or where other special circumstances make it appear desirable that such payment should be withheld, the decree may direct that such money or other property be paid into the surrogate's court for the benefit of such legatee, distributee, beneficiary of a trust or such person or persons who may thereafter appear to be entitled thereto. Such money or other property so paid into court shall be paid out only by the special order of the surrogate or pursuant to the judgment of a court of competent jurisdiction.

AND IT FURTHER APPEARING that said remaindermen Lina Joachim and Rosa Lesser reside in enemy or enemy occupied territory; it is

FURTHER ORDERED, ADJUDGED AND DECREED that out of the balance of principal and income so found as above remaining in its hands in Section I of said account said accountant pay into this Court by paying the Treasurer of the City of New York the sum of One Hundred Sixteen Thousand, Five Hundred Twenty-four and 07/100 Dollars ($116,524.07) (less any expenses incurred in connection with the making of said payment and deposit) for the benefit of Lina Joachim or such other person or persons who may hereafter appear to be entitled thereto in full payment and satisfaction of the balance of principal and income distributable to said Lina Joachim as a remainderman of the trust created under paragraph Fourth of the decedent's will, upon obtaining such Treasury Department license, if any, as may be required under Executive Order No. 8389, as amended, and it is

\* \* \* \* \* \* \*

ORDERED, ADJUDGED AND DECREED that out of the balance of principal and income so found as above remaining in its hands in Section II of said account, said accountant pay into this Court, by paying the Treasurer of the City of New York, the sum of Fifty-One Thousand, Eight Hundred Fifty-Nine and 24/100 Dollars ($51,859.24), (less any expenses incurred in connection with the making of said payment and deposit) for the benefit of Lina Joachim or such other person or persons who may hereafter appear to be entitled thereto in full payment and satisfaction of the balance of principal and income distributable to said Lina Joachim as income beneficiary and remainderman of the trust created by paragraph Fifth of said will upon obtaining such Treasury Department license, if any, as may be required under Executive Order No. 8389, as amended.

Pursuant to this decree, on or about August 12, 1942, the Treasurer of the City of New York in accordance with the New York City Charter and ordinances received $336,734.92, of which $168,361.80 was held for Lina Joachim and $168,373.12 for Rosa Lesser, and so noted for both of them on his records. On August 13, 1942, he deposited the foregoing $336,734.92 in the Manufacturers Trust Company, a banking institution doing business in the city of New York, in a separate account entitled: "The Treasurer of the City of New York Court and Trust Funds, Special Account (Time)."

Before Lina Joachim's death, and on or about December 11, 1942, the Alien Property Custodian of the United States issued Vesting Order No. 490 with respect to her remainder interest in the trust. Vesting Order No. 490 was issued pursuant to the authority of the Trading with the Enemy Act, as amended, and executive orders pertaining to that Act. The decree of the Surrogate's Court of July 3, 1942, was amended on February 4, 1944, and authorized the withdrawal by the Custodian of the $168,361.80, together with accrued interest, less lawful charges and commissions of the city treasurer. On or about March 21, 1944, the Alien Property Custodian received these funds.

In May of 1951, $81,467.21 was paid to Richard H. Joachim, the sole beneficiary of the decedent, by the Attorney General under the author-

ity of section 32 of the Trading with the Enemy Act. The balance remaining in the vested fund was reserved for tax purposes. In August 1951, Richard H. Joachim filed with the collector of internal revenue for the second district of New York a nonresident alien's estate tax return (United States Treasury Form 706 NA). The return as filed reported, for information purposes, the decedent's gross estate to be $168,361.80, claiming that, by virtue of section 863 (b) of the Internal Revenue Code,[2] the estate was not subject to Federal estate tax.[3] The deficiency results from the respondent's determination that "the amount of $168,361.80 on deposit with the Manufacturers Trust Co.". was includible in decedent's gross estate.

The respondent contends that section 863 (b) is not applicable because at the time of the decedent's death the fund was held, not for her, but for the United States. He urges that this section applies only to moneys in which a decedent had an interest at the time of death; that at the time of her death the fund no longer belonged to her; that it could be deposited only for the person who owned it; and that because of the vesting order issued on December 11, 1942, the United States was the owner of the fund on May 28, 1943, the date of decedent's death, and would be the only "person" for whom the fund could be on deposit. He also urges that even during the period immediately prior to the issuance of the vesting order, the relationship between the decedent and the Manufacturers Trust Company was not of such character as would entitle the estate to the benefits afforded by section 863 (b).

The petitioner contends that it is wholly immaterial whether title to the fund was in the United States at the time of the decedent's death in view of section 36 of the Trading with the Enemy Act, 60 Stat. 929,[4] which provides in substance that, for tax purposes, the de-

---

[2] SEC. 863. PROPERTY WITHOUT THE UNITED STATES.

The following items shall not, for the purpose of this subchapter, be deemed property within the United States:

\* \* \* \* \* \* \*

(b) BANK DEPOSITS.—Any moneys deposited with any person carrying on the banking business, by or for a nonresident not a citizen of the United States who was not engaged in business in the United States at the time of his death.

[3] The effect of section 863 (b), taken in conjunction with section 861, is to exclude from the nonresident alien's gross estate any bank deposits covered by section 863 (b).

[4] Sec. 36 (a) The vesting in or transfer to the Alien Property Custodian of any property or interest (other than any property or interest acquired by the United States prior to December 18, 1941), or the receipt by him of any earnings, increment, or proceeds thereof shall not render inapplicable any Federal, State, Territorial, or local tax for any period prior or subsequent to the date of such vesting or transfer, nor render applicable the exemptions provided in title II of the Social Security Act with respect to service performed in the employ of the United States Government or of any instrumentality of the United States.

(b) The Alien Property Custodian shall, notwithstanding the filing of any claim or the institution of any suit under this Act, pay any tax incident to any such property or interest, or the earnings, increment, or proceeds thereof, at the earliest time appearing to him to be not contrary to the interest of the United States. The former owner shall not be liable for any such tax accruing while such property, interest, earnings, increment, or proceeds

cedent's property is to be considered as if no vesting had taken place; that so considered the cash fund was held for decedent at the time of her death in the Manufacturers Trust Company in the name of the Treasurer of the City of New York; and that it is, therefore, not to be deemed property within the United States subject to estate tax under the provisions of section 863 (b).

Under the provisions of Vesting Order No. 490 all right, title, interest, and claim of any kind of the decedent became vested in the Custodian to be held, used, sold, or otherwise disposed of in the interest of and for the benefit of the United States. The title acquired "by the United States was absolute" and the decedent was divested of every right in respect of the $168,361.80 on deposit in the Manufacturers Trust Company in the name of the Treasurer of the City of New York. Cf. *Deutsche Bank*, 300 U. S. 115, 120–121. Because all of the interest of the decedent in this fund was vested in the United States at the time of her death, there would, except for the provisions of section 36 of the Trading with the Enemy Act, be nothing of value with respect to it to include in her gross estate for estate tax purposes. That section gives the United States the right, for tax purposes, to disregard the vesting of the interest of the decedent in the Custodian and authorizes the Custodian to pay any Federal tax, including an estate tax, "to the same extent as though the property or interest had not been vested in or transferred to him." The question arises, therefore, to what extent would the interest of the decedent in the $168,361.80 have been subject to estate tax if it had not been vested in the Custodian at the time of her death.

The answer is that it would have been included in its entirety in the measure of the decedent's gross estate if it did not qualify for exemption under section 863 (b). It represented an amount which she

---

are held by the Alien Property Custodian, unless they are returned pursuant to this Act without payment of such tax by the Alien Property Custodian. Every such tax shall be paid by the Alien Property Custodian to the same extent, as nearly as may be deemed practicable, as though the property or interest had not been vested in or transferred to the Alien Property Custodian, and shall be paid only out of the property or interest, or earnings, increment, or proceeds thereof, to which they are incident or out of other property or interests acquired from the same former owner, or earnings, increment, or proceeds thereof. No tax liability may be enforced from any property or interest or the earnings, increment, or proceeds thereof while held by the Alien Property Custodian except with his consent. Where any property or interest is transferred, otherwise than pursuant to section 9 (a) or 32 hereof, the Alien Property Custodian may transfer the property or interest free and clear of any tax, except to the extent of any lien for a tax existing and perfected at the date of vesting, and the proceeds of such transfer shall, for tax purposes, replace the property or interest in the hands of the Alien Property Custodian.

\*                    \*          \*          \*          \*          \*          \*

(d) The word "tax" as used in this section shall include, without limitation by reason of this enumeration, any property, income, excess-profits, war-profits, excise, estate and employment tax, import duty, and special assessment; and also any interest, penalty, additional amount, or addition thereto not arising from any act, omission, neglect, failure, or delay on the part of the Custodian.

\*          \*          \*          \*          \*          \*          \*

became entitled to receive in 1942 as one of five remaindermen under a testamentary trust created by her brother in 1935. At the time of her death the Treasurer of the City of New York was holding this amount for her benefit, pursuant to court decree, in a special account in his name in the Manufacturers Trust Company. She was a non-resident alien who was not engaged in business in the United States. As such, any moneys deposited with a bank in the United States "by or for" her were under section 863 (b) deemed to be property not within the United States and thus not subject to estate tax. This section does not require the deposit to be made by her or in her name, or that there be a contractual relationship between her and the bank at the time of her death. Its requirements are satisfied if the deposit is made by someone other than the decedent for the decedent's use and benefit. *Estate of Karl Weiss*, 6 T. C. 227, 229. See also *Estate of Elizabeth Hawxhurst Davey*, 10 T. C. 515, 519; *Estate of Anna Floto de Eissengarthen*, 10 T. C. 1277, 1281;[5] *Estate of Irene de Guebriant*, 14 T. C. 611, 618,[5] reversed on another point, 186 F. 2d 307 (C. A. 2); *Estate of Lesley Diana Worthington*, 18 T. C. 796, 801.

Funds held in an active trust for the benefit of a nonresident alien have been held not to be "moneys deposited * * * by or for" him within the meaning of section 863 (b). *City Bank Farmers Trust Co.* v. *Pedrick*, 168 F. 2d 618 (C. A. 2), certiorari denied, 335 U. S. 898; *Estate of Fredericka Loewenstein*, 17 T. C. 60. That is not the situation here. Under the court decree the Treasurer of the City of New York received the amount of $168,361.80 "for the benefit. of Lina Joachim." His sole duty with respect to these funds was to conserve them for her. He deposited them in the Manufacturers Trust Company. Although they were deposited in his name, they were deposited for her as she was the only person who could derive any benefit from them during her lifetime. We deem it immaterial that in order to reduce them to her possession she would have to go through the formality of obtaining a special order of the Surrogate's Court. This did not in any way affect the fact that the moneys were deposited for her benefit and that she was for all practical purposes their owner. We hold that section 863 (b) is applicable and that the Commissioner erred in treating these funds as part of the decedent's gross estate.

Reviewed by the Court.

*Decision will be entered for the petitioner.*

WITHEY, *J.*, dissents.

---

[5] The Commissioner's original nonacquiescence in the *de Eissengarthen* case, 1948-2 C. B. 5, was withdrawn and replaced with an announcement of acquiescence in 1950-2 C. B. 2, where acquiescence in the *de Guebriant* case was also noted.