ESTATE OF RUTH WALDSTEIN, DECEASED, RICHARD H. JOACHIM, BENEFICIARY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 65776. Filed October 31, 1960.

*Charles Meyer, Esq.*, for the petitioner.
*Anthony S. Del Giudice, Esq.*, for the respondent.

OPINION.

FORRESTER, *Judge:* Respondent has determined a deficiency of $18,539.13 in the estate tax of the decedent, Ruth Waldstein. The question for our decision is whether funds on deposit at the Federal Reserve bank for the account of the Alien Property Custodian at the time of decedent's death were excludible from decedent's gross estate under section 863(b) of the Internal Revenue Code of 1939,[1] as property not situated in the United States.

All of the facts have been stipulated and are so found.

Decedent died intestate about October 3, 1944, in a German concentration camp in Holland. At all times material herein she was a nonresident alien not engaged in business in the United States.

Decedent was the daughter of Lina Joachim (hereinafter referred to as "Lina") who was also a nonresident alien not engaged in business in the United States. Lina was a remainderman of a trust created under the will of her brother who died domiciled in New York in 1935. When the brother's wife died in 1941 Lina became entitled to her remainder interest. However, since Lina then resided "in enemy or enemy occupied territory," the Surrogate of the Surrogate's Court of New York County decreed on July 3, 1942, that the trustee pay Lina's share of the trust funds, totaling $168,361.80, into court by paying the funds to the treasurer of the City of New York "for the benefit of Lina Joachim or such other person or persons who may hereafter appear to be entitled thereto." The funds were so paid, on about August 12, 1942, and the next day, after properly marking his records, the treasurer of the City of New York, deposited the funds in the Manufacturers Trust Company, a banking institution doing business in the city of New York, in a separate account entitled: "The Treasurer of the City of New York Court and Trust Funds, Special Account (Time)."

On about December 11, 1942, the Alien Property Custodian of the United States issued a vesting order with respect to Lina's remainder interest in the trust. Lina died in a German concentration camp on May 28, 1943. On February 4, 1944, the original Surrogate's Court decree was amended and authorized the Custodian to withdraw the funds on deposit with the New York bank. On about March 21, 1944, the Alien Property Custodian thus received $165,591.52 representing Lina's remainder interest after lawful charges and commis-

---

[1] SEC. 863. PROPERTY WITHOUT THE UNITED STATES.

The following items shall not, for the purpose of this subchapter, be deemed property within the United States :

\* \* \* \* \* \* \*

(b) BANK DEPOSITS.—Any moneys deposited with any person carrying on the banking business, by or for a nonresident not a citizen of the United States who was not engaged in business in the United States at the time of his death.

sions of the city treasurer. Pursuant to section 12 of the Trading With the Enemy Act, the Alien Property Custodian on the same date deposited the funds with the Treasurer of the United States who in turn deposited them in the New York branch of the Federal Reserve bank. The funds were there held in a general account for the account of the Custodian and the funds so remained at the date of decedent's death on October 3, 1944.

Under Lina's will decedent took 56 per cent and Lina's son, Richard Joachim (decedent's brother and the individual petitioner in the instant case, hereinafter called Richard), took 44 per cent of Lina's estate. Decedent's gross share amounted to $94,282.60 and her right to this amount constituted the only asset she owned at her death. Richard is decedent's sole heir.

In May 1951, Richard secured the return of $81,467.21 of Lina's funds under the authority of section 32 of the Trading With the Enemy Act. The balance remaining in the fund was reserved for tax purposes.

In August 1951, Richard filed with the collector of internal revenue, second district of New York, a nonresident alien's estate tax return (Form 706NA) on behalf of Lina's (his mother's) estate. On such return he disclosed (for information purposes) Lina's interest in the funds but claimed such interest was, by virtue of section 863(b), not includible in Lina's gross estate. In the case of this return, respondent proposed a deficiency of $35,213.19 against the Estate of Lina Joachim, Deceased. Thereafter, Richard filed a petition in this Court as follows: Estate of Lina Joachim, Deceased, Richard H. Joachim, Beneficiary, Petitioner, v. Commissioner of Internal Revenue, Respondent. In such proceeding, we held (July 14, 1954) that section 863(b) was applicable and that the respondent had erred in including the funds as part of Lina's gross estate. *Estate of Lina Joachim*, 22 T.C. 875. The Commissioner acquiesced in such decision, 1955-2 C.B. 7.

Subsequent to May 1951, Richard has secured the return of all of the remaining funds from his mother's and sister's estates which were vested in the Alien Property Custodian except the sum of $19,000 withheld as a reserve for the approximate amount of the deficiency determined by the respondent in this case.

As decedent's sole beneficiary, Richard filed under protest Form 706NA (nonresident alien's estate tax return) for the petitioner on March 15, 1955, with the collector of internal revenue, second district of New York. On such return he disclosed the existence of decedent's interest in the funds but treated it as being not part of decedent's gross estate. Accordingly, he reported her net estate to be zero.

The instant proceeding arises out of a continuation of or sequel

to the train of events which gave rise to *Estate of Lina Joachim, supra,* and that case is not res judicata here as is urged by petitioner. *Tait* v. *Western Md. Ry. Co.,* 289 U.S. 620. Decedent was the daughter of Lina Joachim. Each was a nonresident alien, not engaged in business in the United States. Under her mother's will decedent became entitled to 56 per cent of her mother's estate. The mother's estate consisted solely of a remainder interest in a trust fund and the daughter's estate consists solely of 56 per cent of that same interest. Taxability of the interest in the mother's estate was the question we decided in *Estate of Lina Joachim, supra,* while taxability of the 56 per cent interest in the daughter's estate is the question now before us.

There is only one pertinent difference in the facts underlying the two situations. The entire interest had, under the order of the Surrogate's Court, been deposited in the Manufacturers Trust Company on August 13, 1942, "for the benefit of Lina Joachim or such other person or persons who may hereafter appear to be entitled thereto." Thereafter, on December 11, 1942, Vesting Order No. 490 issued with respect to such interest of Lina Joachim. The next event was Lina Joachim's death which occurred on May 28, 1943. Thereafter, on March 21, 1944, the Alien Property Custodian withdrew such remainder interest from Manufacturers Trust Company and deposited it with the Treasurer of the United States, who, in turn, deposited it in the New York branch of the Federal Reserve bank, where it has remained at all times since. The next event is the death of Ruth Waldstein which occurred on October 3, 1944.

The above recitation of the facts in their chronological sequence demonstrates that the only fundamental difference between the question for decision in the mother's estate and the question for decision here is that in the case of the mother the funds were still on deposit with the Manufacturers Trust Company at the time of her death, while here they were on deposit with the New York branch of the Federal Reserve bank at the time of decedent's death.

Respondent argues that that difference requires us to reach a different result here from that reached in *Estate of Lina Joachim, supra,* and expresses his position on brief as follows:

In the instant proceeding the moneys in question represent the interest of Ruth Waldstein and not the interest of Lina Joachim. The funds in the instant proceeding at Ruth Waldstein's death were deposited with the Treasurer of the United States whereas the funds in the case of the estate of Lina Joachim at the time of her death were still deposited with the Manufacturers Trust Company.

The fact that the Alien Property Custodian had collected the moneys representing Ruth Waldstein's interest and deposited them with the Treasurer of the United States *fixes the situs of the money.* There was no necessity to issue

a second Vesting Order with respect to her interest in the funds previously vested under Vesting Order No. 490. Her interest had already become public funds in the hands of the Treasurer of the United States. * * * [Emphasis supplied.]

We pause to observe that we need not and will not pass upon the propriety of the failure of the Alien Property Custodian to issue a second vesting order against the 56 per cent interest of Ruth Waldstein. The order of the Surrogate's Court had directed that the entire interest (necessarily including this 56 per cent interest) be held "for the benefit of Lina Joachim or such other person or persons who may hereafter appear to be entitled thereto." The order thus included decedent's 56 per cent interest, and the Alien Property Custodian's position in not issuing a second vesting order recognizes this. Such position is not contested by petitioner.

We now consider whether the one pertinent factual difference between the issue presented here and the issue decided in *Joachim* requires a different result.

Respondent's position in *Joachim* was that section 863(b), *supra*, was not applicable because at the time of her death the fund was held not for Lina but for the United States. The respondent seems to urge the same proposition here with the additional argument that the transfer of Ruth's 56 per cent interest to the Treasurer of the United States and to the New York branch of the Federal Reserve bank fixed the situs of the fund otherwise than "deposited with any person carrying on the banking business" within the intendment of section 863(b), *supra*.

Section 36 of the Trading With the Enemy Act provides, in pertinent part, as follows:

(a) The *vesting in or transfer to* the Alien Property Custodian of any property or interest * * * shall not render inapplicable any Federal * * * tax for any period prior or subsequent to the date of such vesting or transfer, * * *.

(b) The Alien Property Custodian shall * * * pay any tax incident to any such property or interest, * * *. Every such tax shall be paid by the Alien Property Custodian * * *, *as though the property or interest had not been vested in or transferred to the Alien Property Custodian,* * * *.

    *       *       *       *       *       *       *

(d) The word "tax" as used in this section shall include, * * * any * * * estate * * * tax * * * [Emphasis supplied.]

The language of the above section gives equal weight to a "vesting in" and a "transfer to" the Alien Property Custodian. The provisions of the section are operative in either event.

We next consider whether the above-cited provisions of section 36 require us to disregard the circumstance that the funds were, at decedent's death, in fact deposited with the Federal Reserve bank and to consider them as still on deposit at Manufacturers Trust

Company.  The rationale of the *Joachim* decision quite inescapably compels this conclusion.  The transfer of funds was made possible only by virtue of the vesting.  Had there been no vesting, manifestly the Alien Property Custodian could not have procured the transfer of the funds to the Federal Reserve bank.  It defies any known rule of logic to reason that although the statute requires us to assume for tax purposes that step 1 (the vesting) had never occurred nevertheless, in the same case, to consider step 2 (the transfer of funds) as having taken place when step 2 is entirely dependent upon step 1 and cannot be taken without step 1.

It is worthy of note that section 36(b) in the third sentence contains the words:

Every * * * tax shall be paid * * * as though the property or interest had not been vested in or *transferred to* the Alien Property Custodian, * * * [Emphasis supplied.]

We view this as an unambiguous congressional direction that we disregard not only the vesting of property in the Alien Property Custodian but also any transfer made pursuant to the vesting.[2]  We thus cannot accept respondent's ruling, 1956–2 C.B. 602, that the actual transfer of funds to a Federal Reserve bank renders the *Joachim* case inapplicable.

We refuse to permit respondent the luxury of having the cake and the penny both.  If section 36(b) of the Trading With the Enemy Act operates (as the *Joachim* case holds)[3] to freeze ownership of property as of the date when the vesting occurs (and respondent necessarily must so contend in order to include this property in the gross estate initially), it must also be effective to restore the tax results *which would have obtained* had there been no vesting or transfer.

Accordingly, we hold that for Federal estate tax purposes the funds were on deposit for the benefit of decedent with the Manufacturers Trust Company, a private banking institution, and thus were excludible from decedent's gross estate under the provisions of section

---

[2] In reporting on what is now section 36(a) of the Trading With the Enemy Act, the House Report (H. Rept. No. 2398, 1946 U.S. Code Congressional Service 1482) stated: "In short, the tax provisions are designed to insure payment of taxes as nearly as possible as if Government ownership through vesting had not intervened."

[3] In the following language: "Because all of the interest of the decedent in this fund was vested in the United States at the time of her death, there would, except for the provisions of section 36 of the Trading with the Enemy Act, be nothing of value with respect to it to include in her gross estate for estate tax purposes.  That section gives the United States the right, for tax purposes, to disregard the vesting of the interest of the decedent in the Custodian and authorizes the Custodian to pay any Federal tax, including an estate tax, 'to the same extent as though the property or interest had not been vested in or transferred to him.'  The question arises, therefore, to what extent would the interest of the decedent in the $168,361.80 have been subject to estate tax if it had not been vested in the Custodian at the time of her death."

863(b), *supra*. Cf. *Estate of Karl Weiss*, 6 T.C. 227 (1946), acq. 1946–2 C.B. 5.

What we have said is dispositive of this entire case and renders unnecessary any consideration of other arguments advanced by the parties.

*Decision will be entered for the petitioner.*