ESTATE OF KARL JANDORF, THE FIRST NATIONAL BANK OF BOSTON, CUSTODIAN AND STATUTORY EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9327. Promulgated September 12, 1947.

*Sumner H. Babcock, Esq.,* and *George S. Fuller, Esq.,* for the petitioner.

*William F. Evans, Esq.,* for the respondent.

OPINION.

HARRON, *Judge*: The question is whether United States Treasury bonds beneficially owned by a nonresident alien individual not doing business in the United States, which were issued after March 1, 1941, and were physically located in the United States, are subject to estate tax.

Petitioner's broad contention is that such class of bonds are exempt from estate tax by virtue of section 4 of the Victory Liberty Loan Act of March 3, 1919; ch. 100, 40 Stat. 1309, 1311; 31 U. S. C., sec. 750. The pertinent provision is set forth in the margin.[1]

Before addressing ourselves specifically to petitioner's contention, it would not be amiss to observe that the provisions of the Internal Revenue Code imposing an estate tax on the transfer of property at death do not exempt the transfer of Federal bonds of any type. Sections 811 and 861 of the Internal Revenue Code provide, in substance, that the value of all property owned by a nonresident not a citizen of the United States which is situated in the United States shall be included in the gross estate subject to tax. It is, of course, apparent that the bonds in question are within the broad classification of property contained in these sections. See *Edgar A. Igleheart*, 28 B. T. A. 888, 910; affd., 77 Fed. (2d) 704. Also, section

---

[1] Sec. 4 of the Victory Liberty Loan Act of March 3, 1919, ch. 100, 40 Stat. 1309, 1311 provides:

"* * * * * * *

"That, notwithstanding the provisions of the Second Liberty Bond Act or of the War Finance Corporation Act or of any other Act, bonds, notes, and certificates of indebtedness of the United States and bonds of the War Finance Corporation shall, while beneficially owned by a nonresident alien individual, or a foreign corporation, partnership, or association, not engaged in business in the United States, be exempt both as to principal and interest from any and all taxation now or hereafter imposed by the United States, any State, or any of the possessions of the United States or by any local taxing authority."

81.13 of Regulations 105, effective March 1, 1941, provides that bonds of the United States issued on or after March 1, 1941, which are beneficially owned by a nonresident who was not a citizen and not engaged in business in the United States should be included in the gross estate.[2] The only exception with respect to property beneficially owned by a nonresident alien is that the bonds shall be physically situated outside the United States at the time of death. *Herman A. Holsten*, 35 B. T. A. 568; affd., 93 Fed. (2d) 1002. If the United States Treasury bonds were issued after March 1, 1941, and are physically located in the United States, the terms of the Internal Revenue Code and of the cited regulation subject them to the estate tax. *Burnet v. Brooks*, 288 U. S. 378.

Turning now to section 4 of the Victory Liberty Loan Act, *supra* which is relied upon by petitioner as exempting the bonds from estate tax, we find that the bonds are declared to be "exempt both as to principal and interest from any and all taxation now or hereafter imposed by the United States * * *." Petitioner contends that the Federal estate tax is within the scope of the above statutory provision.

As a matter of statutory construction, petitioner can derive little support for its position that the bonds are not subject to estate tax from the literal language of the statute. It will be noted that, in terms, the exemption from taxation applies to the principal and interest of the bonds and to nothing more. A tax imposed with reference to a transfer of bonds at death is obviously not a tax on the interest of the bonds. Nor is it a tax on the principal of the bonds. It is an excise tax imposed upon the transfer of or shifting in relationships to property at death. *United States Trust Co. of New York v. Helvering*, 307 U. S. 57. It would seem to follow, therefore, that, since an estate tax is not a tax on the income of the bonds or on the bonds themselves, an estate tax would not come within the terms of the above tax exemption. Section 4 of the 1919 Liberty Loan Act deals with direct taxes on property; not with any excise tax upon the transfer of property.

Such is the *rationale* of *Plummer v. Coler*, 178 U. S. 115, and *Murdock v. Ward*, 178 U. S. 139, where the issue involved the application of the New York inheritance tax, and the Federal inheritance tax under the

---

[2] Sec. 81.13 [Regulations 85]. Property of Decedent at Time of Death.—* * * * * * * * * *

Various statutory provisions, which exempt bonds, notes, bills and certificates of indebtedness of the Federal Government or its agencies and the interest thereon from taxation, are not applicable to the estate tax, since this tax is an excise tax on the transfer, and is not a tax on the property transferred. In case the decedent was a non-resident who was not a citizen and not engaged in business in the United States, bonds, notes, and certificates of indebtedness of the United States, beneficially owned by such decedent should not be included; however, bonds, notes, and certificates of indebtedness of the United States, issued on or after March 1, 1941, which such decedent beneficially owned, should be included in the gross estate. [Effective Mar. 1, 1941.]

War Revenue Act of June 1898,[3] to bonds of the United States which contained a clause exempting the "principal and interest" from Federal, state, and local taxation. The bonds had been issued pursuant to the Act of July 14, 1870, which provided that "all of which said several classes of bonds and the interest thereon shall be exempt from the payment of all taxes or duties of the United States as well as from taxation in any form by or under state, municipal, or local authority." The Supreme Court held in the *Plummer* case that the bonds were subject to the New York inheritance tax, and held in the *Murdock* case that the bonds were subject to the Federal inheritance tax, because the state may tax the right to take property by will or descent, measured by the value of the property passing, and such a tax is not a tax upon the bonds but upon the rights and privileges created and regulated by the state. See also, *Bankers Trust Co. (Estate of Fellner)*, 33 B. T. A. 746, which considered the question whether war risk insurance was includible in gross estate and subject to estate tax in view of the provisions of the World War Veterans' Act of 1924, 43 Stat. 613, which provided that such insurance shall be exempt from all taxation. The Board of Tax Appeals held that the insurance was includible in the gross estate for estate tax purposes, irrespective of the tax exemption provision in the above cited act.

The reasonableness of the view that the distinction should be made, and was intended to be preserved, between the excise tax which a sovereign state imposes upon a transfer of property at death and other taxes which are direct taxes on property is to be found in the doctrine that the government gives protection to property within its jurisdiction and safeguards rights of ownership and interests therein. The decedent had for several years been the proprietor of stores in Berlin, Germany. He and his associates sold their business in 1928, and the decedent went to Switzerland. Two brothers came to the United States, one settling in Boston and one in New York. In 1938 and 1939, the latter year being the year of the outbreak of the Second World War, the decedent sent money to the United States aggregating at least $180,000, part of which was invested in the bonds involved in this case. The decedent instructed his brothers to keep the funds and investments thereof in safekeeping for him in the United States, because the decedent believed he would come to the United States later, to live with one of his brothers. Thus, property of the decedent was kept safe and secure within the United States, where the Government was strong and expected to endure; whereas in many countries abroad, governments were unstable and subject to the risks of war. And so it came to pass that upon the death of the decedent some of his property was located within the United States, and the rights in the

---

[3] 30 Stat. 448.

property, given by will or laws of descent, were protected by the Government which now has assessed an excise tax upon the transfer thereof. The excise tax, in this instance, can be seen to be accompanied by benefits given by a sound, sovereign state; it is a tax upon the rights and privileges pertaining to property located in the United States created and regulated by that state. Cf. *United States* v. *Bennett*, 232 U. S. 299, 307; *Cook* v. *Tait*, 265 U. S. 47.

*Phipps* v. *Commissioner*, 91 Fed. (2d) 627, affirming 34 B. T. A. 641, points the same way. Although the question in the *Phipps* case was the application of the gift tax to First Liberty Loan bonds, the court said:

* * * A provision exempting bonds of a sovereign from taxation as to principal and interest, without more, relates exclusively to ad valorem or other direct taxes on them as property. Bonds issued under such a statute and containing such a covenant may be subjected to payment of an inheritance tax or an estate tax, because an indirect tax of that kind is an excise upon the transmission of the property, not a tax on the property *eo nomine*.

Under the authority of the cited cases, we think that the provision in the 1919 Victory Liberty Loan Act exempting bonds of the United States owned by a nonresident alien not engaged in business in the United States, "both as to principal and interest from any and all taxation," does not, of itself, exempt the bonds from the reach of the Federal estate tax. See also, *Edgar A. Igleheart, supra*, in which Federal Farm Loan bonds were held to be subject to Federal estate tax, notwithstanding a statutory provision exempting the bonds and the income derived therefrom from Federal, state, municipal, and local taxation.

Petitioner, contending that it was the intent of the Congress to relieve the bonds in question from estate tax, develops a rather elaborate argument based upon comparisons of other sections of the Victory Liberty Loan Act with section 4 thereof; and upon comparison of section 4 of the Victory Liberty Loan Act with certain sections in the various Liberty bond acts dealing with the tax exemptions of other issues of United States bonds. The argument of petitioner requires examination, *inter alia*, of section 7 of the Second Liberty Bond Act of September 24, 1917, ch. 56, 40 Stat. 288, 291; 31 U. S. C., sec. 747 [4] (which relates to bonds owned by citizens or residents of the United States; section 3 of the Fourth Liberty Bond Act of July 9,

---

[4] Sec. 7 of the Second Liberty Bond Act, *supra*, provided that the bonds and certificates which were authorized under the act:

"* * * shall be exempt, both as to principal and interest from all taxation now or hereafter imposed by the United States, any State, or any of the possessions of the United States, or by any local taxing authority, except (a) estate or inheritance taxes, and (b) graduated additional income taxes, commonly known as surtaxes, and excess profits and war-profits taxes, now or hereafter imposed by the United States, upon the income or profits of individuals, partnerships, associations, or corporations. * * *"

1918, ch. 142, 40 Stat. 844, 845; and section 18 (a) of the Second Liberty Bond Act as added by the Victory Liberty Loan Act, *supra*, 40 Stat. 1309, 1310; 31 U. S. C., section 753 [5] (which relates to bonds owned by citizens or residents of the United States). The gist of petitioner's argument is that, since other sections specifically provide that United States bonds *shall be subject to estate tax*, by such language as the following, "exempt, both as to principal and interest from all taxation * * * *except (a) estate or inheritance taxes* * * **"; and since section 4 of the Victory Liberty Loan Act of 1919 (see footnote 1) does not specifically mention estate or inheritance taxes, it must follow that the Congress intended to exempt the bonds in question from estate and inheritance taxes.

Upon examination of the pertinent statutes and the legislative history, we are unable to agree with petitioner's contention. What evidence there is in the committee reports [6] and reports of hearings before the House Ways and Means and Senate Finance Committees [7] shows that section 4 of the Victory Liberty Loan Act was designed to exclude the bonds held by nonresidents from additional income, surtax, and excess profits taxation in order to make them an attractive investment to foreigners; and we are unable to find any expression of intent to exempt the bonds from estate tax. As stated before, we understand the phrase in question, "exempt both as to principal and interest from any and all taxation," to limit the tax exemption to taxes on the principal and interest of the bonds. We think the addition to the phrase of other words (such as appear in the other sections) would not have constituted anything more than clarification of the intent to limit the tax exemption as above stated. See *Phipps* v. *Commissioner*, *supra.* Neither the statute nor the records of the congressional committees show a clear intention to exempt the bonds in question from Federal estate tax, *in addition to* all taxes on principal and interest. Those who seek an exemption from tax must rest it on more than a doubt or ambiguity. Exemptions from taxation can not rest upon

---

[5] Sec. 18 (a) of the Second Liberty Bond Act as added by the Victory Liberty Loan Act authorized the Secretary of the Treasury to issue notes which in the discretion of the Secretary would be:

"(1) Exempt, both as to principal and interest from all taxation (except estate or inheritance taxes) * * *;

"(2) Exempt, both as to principal and interest from all taxation * * * except (a) estate or inheritance taxes and (b) graduated additional income taxes * * *;

"(3) Exempt, both as to principal and interest, as provided in paragraph (2) ; and with an additional exemption from the taxes referred to in Clause (b) of such paragraph, of the interest on an amount of such notes the principal of which does not exceed $30,000 * * *;

"(4) Exempt, both as to principal and interest from all taxation * * * except (a) estate or inheritance taxes, and (b) all income, excess profits, and war profit taxes now or hereafter imposed by the United States * * *."

[6] H. Rept. 1131 and S. Rept. 786, 65th Cong., 3d sess. (1919).

[7] Hearings on H. R. 16136, 65th Cong. 3d sess., Feb. 13 and 14, 1919.

mere implications. *United States* v. *Stewart*, 311 U. S. 60. We think that the applicable regulation (cited in footnote 2) properly construes the statute. *Helvering* v. *Wilshire Oil Co.*, 308 U. S. 90. It is noted that the regulation was made prospective from its approval date of March 1, 1941. The bonds in question were purchased after March 1, 1941.

Furthermore, we think the reasoning of *Murdock* v. *Ward, supra,* and of other cases cited heretofore, provides substantial authority for the respondent's view. The wording of section 4 of the 1919 Victory Liberty Loan Act is substantially the same as the language of the Act of July 14, 1870, which received construction by the Supreme Court in *Murdock* v. *Ward, supra.* Petitioner relies upon *Farmer's Loan & Trust Co.* v. *Bowers* (1927), 22 Fed. (2d) 464, but we are unable to arrive at the same conclusion as the District Court did in that case, in view of the *rationale* of the above cited cases and the subsequently promulgated regulation.

It is held that the United States Treasury bonds which were issued after March 1, 1941, in the face amount of $75,000, plus accrued interest, and which were located in the United States, are includible in the gross estate of the decedent.

*Issue 2.*—Petitioner's contention that it is entitled to deduction for counsel fees and other administration expenses, despite the admitted failure to comply with section 861(b) of the Internal Revenue Code,[8] must be rejected, on the record in this case, on the authority of *Rodiek* v. *Helvering*, 87 Fed. (2d) 328, 332, affirming 33 B. T. A. 1020, 1043. This is because, under section 861(a), the deductions allowed the estate of a nonresident, not a citizen, are allowed only in the proportion that the assets within the United States bear to the entire gross estate, wherever situated. See Regulations 105, section 81.52 and 81.68(b). Petitioner offered no evidence whatsoever in support of its claim for the deductions. The question presented requires proof of matters other than amounts expended for counsel fees and administration expenses in connection with the property of the decedent located within the United States. Such evidence must be presented at the trial of the case. Respondent did not agree at the trial to make any stipulation on the matter under Rule 50.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

[8] SEC. 861. NET ESTATE.

\*     \*     \*     \*     \*     \*     \*

(b) CONDITION OF ALLOWANCE OF DEDUCTIONS.—No deduction shall be allowed in the case of a nonresident not a citizen of the United States unless the executor includes in the return required to be filed under section 864 the value at the time of his death of that part of the gross estate of such nonresident not situated in the United States.