## CITY BANK FARMERS TRUST CO. v. PEDRICK.

### No. 262, Docket 20973.

Circuit Court of Appeals, Second Circuit.

May 27, 1948.

John B. Creegan, and John F. X. McGohey, U. S. Atty., both of New York City, for appellant.

Charles Angulo and Benjamin Nassau, both of New York City (Mitchell, Capron, Marsh, Angulo & Cooney, of New York City, of counsel), for appellee.

Before L. HAND, SWAN and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

The defendant, a collector of internal revenue, appeals from a judgment in favor of the plaintiff in an action brought to recover estate taxes alleged to have been unlawfully collected. The only question is whether a bank deposit of $80,377.02 was properly included within the estate of a deceased alien, or whether it should have been excluded under § 863(b) of the Internal Revenue Code.[1] The facts, which were conceded, are as follows. Edwin Prestage, a British subject, died on October 11, 1940, leaving a will which was admitted to probate after his death, and under which the plaintiff is ancillary executor. On July 31, 1939, he had executed

---

[1] Title 26 U.S.C.A. Int.Rev.Code, § 863(b).

and delivered to the plaintiff, as trustee, a deed by which he conveyed in trust some shares of stock and some bonds, and $79,-000 then on deposit to his account in the National City Bank of New York, of which the plaintiff is an affiliate, though it is a separate corporation. This deed provided that the trustee should collect the income from the property and apply it to the use of Prestage during his life, and after his death to that of his wife; and upon the death of both to transfer the principal as the survivor might appoint by will, with remainders over not relevant here. It gave the trustee various rights in the management of the trust fund (subject to the supervision of the settlor) which it is not necessary to set forth; and, in Article Fifth the settlor reserved to himself "the right at any time or from time to time, with the consent in writing of the Trustee (but not otherwise) * * * to amend or revoke this instrument or the trusts hereby created, either in whole or in part," in which event the principal was to be transferred back to him. After his death a similar power of termination was reserved to his wife, and then the deed went on as follows: "In giving or withholding its consent to any such amendment, revocation or termination, the Trustee shall consider only the interests of the Settlor or his said wife in making such revocation or termination, as the case may be, and not those of any other person interested in the trust hereby created, except that in its own individual interests the Trustee may withhold its consent to any proposed amendment which in its judgment would substantially increase its duties or responsibilities." The Commissioner included the deposit as part of the taxable estate; and the plaintiff paid the tax—$8,499.46—which it now seeks to recover. The record does not disclose the purpose of Prestage in making the trust, but in its brief the plaintiff suggests that it may have been to protect him in case Britain were invaded and he was compelled to execute documents transferring his property to a foreign government. The judge held that the deposit had not lost its character as "moneys deposited with * * * (a) banking business, by or for a nonresident not a citizen of the United States who was not engaged in business in the United States at the time of his death"; [2] and gave judgment for the plaintiff.

The plaintiff's argument presupposes that the case is the same as though the settlor had reserved an unconditional power to withdraw the deposit from the trust whenever he chose. It argues that, although the trustee was a "department" of the National City Bank, the deposit after its transfer by the settlor was no more than a debt owed to the trustee by the bank, precisely as it had been while the settlor himself was the depositor; and with all this we agree. It further argues that the transfer, whatever might otherwise have been its effect, when read with the power of revocation, affected the settlor's control over the deposit only in form. Although it then became necessary for him, as a preliminary to drawing a cheque on the account, to execute the document prescribed in the deed revoking the trust pro tanto, that did not clog his control; it merely added to the number of papers he must sign. We are not sure that § 863(b) would exempt the deposit, even if the power were as absolute as this argument assumes. The purpose of the section was indeed to encourage the maintenance by aliens of bank deposits in our banks; but it is at least open to doubt whether the deposits intended were other than ordinary bank accounts subject to withdrawal by cheque, of which the public often speaks as "cash in bank" and regards much as it does currency. Contrary to the plaintiff's assertion, the section is a tax exemption; and it is idle to try to disguise its purpose by setting it down as a regulation of the "situs"—that much abused word—of bank deposits. As an exemption section we look at it jealously; and we wish to guard against the implication that, even if the reserved power had put the deposit unconditionally within the settlor's control, it would have been exempt.

That question we need not, however decide, because the power was not

---

[2] § 863(b).

unconditional. In form there can be no debate about this; the words which we have quoted above are themselves enough: the trustee must consent in writing to the withdrawal of any part of the res. Had that stood alone, no argument would have been possible; such a deposit was not the alien's deposit at all; he would have no legally enforceable interest in it whatever except to the interest upon it. The only question that can arise is of the meaning of the condition imposed upon the trustee's "giving or withholding its consent" that it shall consider "only the interests of the Settlor or his said wife in making such revocation." Those words of course meant something, or they would not have been put in; and they can only mean that there will be occasions upon which the trustee may, and indeed should, overrule the settlor by refusing to allow him to withdraw the deposit. Moreover, the trustee must determine for itself what are the occasions on which a revocation will not accord with the settlor's interests, the only limitation being that into that determination there shall enter no other consideration. We can see no reason to limit the occasions on which it might overrule the settlor to those on which he was actually under coercion. Take for example the date of his death, October 11, 1940. September had been a dark month for Britain; it is true that she had repelled the German air fleet, but only at vast cost to her own; and, although we now know that no invasion was in prospect, the British did not know it, nor did we in the United States. Suppose that Prestage had demanded a revocation in that month; again we see no reason for saying that the trustee could not properly have refused its consent in "the interests of the Settlor" alone. Or, if it be argued that the duty to consent was absolute upon all occasions when the revocation was not the result of immediate duress, at least the trustee was always under a duty to inform itself whether the revocation had been extorted by such means. Finally, we can see no reason to limit the duress to a period of German invasion; it might have included a domestic capital levy; it might have included any sort of undue influence, any thing which overbore the settlor's

competence to protect his own interest. Upon all occasions the trustee should at least inquire as to the situation which induced the revocation. It makes no difference for the purposes of this section what the result of that inquiry would be; it would make no difference though we were satisfied that the trustee would in fact always accede. What does make a vital difference is that there was always the possibility that it might not accede, and that if it did not, even though its refusal was unlawful, the settlor could not withdraw the deposit without resort to negotiation at least, and after that to a court. A deposit so hedged about with restrictions is not properly a bank deposit at all; at least there is no reason to suppose that it is within the scope of § 863(b).

Judgment reversed; complaint dismissed.