ESTATE OF IRENE DE GUEBRIANT, DECEASED, AVERY CLAFLIN AND PHILIP A. CARROLL, EXECUTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17081.   Promulgated April 18, 1950.

*E. L. Finnan, Esq.*, for the petitioner.
*E. Randolph Dale, Esq.*, for the respondent.

614

OPINION.

HILL, *Judge: Issue 1.*—The first question we have to determine in this proceeding is whether one-half of the trust funds deposited in the name of the trustees of the La Grange trust at the United States Trust Co. constituted money on deposit "by or for" decedent within the meaning of section 863 (b) of the Internal Revenue Code [1] at the time of her death. Respondent concedes that all the other requirements of this section of the code are met. While he admits that decedent was entitled to receive one-half of the assets of the La Grange trust after the death of La Grange, he claims that Irene de Guebriant had no right to the specific assets of the trust, such as the bank deposits, until a final accounting, release of the trustees, and conveyance of the trust assets to the remaindermen had taken place. Since no final settlement and distribution of the La Grange trust had been made at the time decedent died, respondent contends that trust funds deposited in the bank were not on deposit "by or for" her within the meaning of section 863 (b). Petitioner asserts that, since the trust had terminated and decedent was entitled to one-half of the trust assets as a remainderman, one-half of the funds deposited

---

[1] SEC. 863. PROPERTY WITHOUT THE UNITED STATES.

The following item shall not, for the purpose of this subchapter, be deemed property within the United States :

\*  \*  \*  \*  \*  \*  \*

(b) BANK DEPOSITS.—Any moneys deposited with any person carrying on the banking business, by or for a nonresident not a citizen of the United States who was not engaged in business in the United States at the time of his death.

at the bank were a deposit "by or for" decedent within the statutory language. We agree with petitioner's contention.

If it could be said that, upon the death of La Grange, automatically by force of New York law decedent owned one-half of the trust assets as one of the two remaindermen, then there would be little doubt that the funds in the trustee's account at the United States Trust Co. were deposited "by or for" Irene de Guebriant. See *Estate of Anna Floto de Eissengarthen*, 10 T. C. 1277. But it is still debatable under New York law whether, in the period between termination of a trust and the distribution of the assets, legal title to the trust funds vests automatically in the remaindermen where, as here, the corpus was composed entirely of personalty. See *Matter of Thomas*, 254 N. Y. 292; 172 N. E. 513; *Russell* v. *Bowers*, 27 Fed. Supp. 13; and *In re Fiske's Estate*, 88 N. Y. S. (2d) 452.

Assuming that decedent did not have legal title to a portion of the trust funds, we are yet convinced that one-half of the trustees' account at the United States Trust Co. was on deposit "by or for" decedent at the time of her death within the meaning of section 863 (b) as we interpreted the above quoted words in *Estate of Karl Weiss*, 6 T. C. 227. We held in that case that the deposit need not be in the decedent's name, nor need it be made directly by the decedent, nor is a direct contractual relationship between decedent and the bank necessary in order for the deposit to come within the meaning of section 863 (b). This interpretation of the statute rebuts the conclusions drawn by respondent based on the absence of such facts in the present case. Futhermore, we stated in the *Weiss* case, p. 228, that "a usual meaning of 'for' when thus coupled with 'by' is 'for the use and benefit of' or 'upon behalf of'."

We have concluded from the circumstances existing at the time of Irene de Guebriant's death that one-half of the trust funds in the trustees' account at the United States Trust Co. were for her use and benefit. War conditions prevented a final accounting between the trustees and decedent and a distribution of one-half of the deposited funds to her. This circumstance alone held up the settlement of the trust following the death of La Grange. Furthermore, an accounting of their activities was prepared by the trustees in readiness for the day when they could obtain a license to transact business with Irene de Guebriant and so wind up the trust. During the two-year period between the termination of the trust and the death of decedent, Carroll and Claflin were mere liquidating trustees, collecting income on the trust assets and filing tax returns showing the distribution thereof to decedent and Marc de La Bossiere-Thenne. Their fiduciary duties to conserve the trust assets during this period were for the sole benefit of these new beneficiaries, the remaindermen, rather than for the life

tenant. The trustees were accountable to Irene de Guebriant for both the principal of the trust and all income accumulating after the expiry date of the trust. See *Trust of Bingham* v. *Commissioner*, 325 U. S. 365, 373. Decedent had a direct enforceable claim against the trustees for an accounting and conveyance of one-half of the bank deposit, as respondent admits. The fact that trustees' commissions might slightly reduce the total amount eventually transferred to Irene de Guebriant does not detract from her unconditional right to a portion of these funds.

Furthermore, while it is certainly true that during the period between termination of the trust and distribution of the trust assets the trustees had duties and necessary powers to wind up the trust estate, it is not at all clear that the sale of certain securities in the trust and investment of the proceeds therefrom in United States obligations were not outside these powers. Certainly it is a general rule that trustees have no power to invest subsequent to termination of a trust. Scott on Trusts, vol. 3, sec. 344, p. 1890. Such actions by the trustees bespeak an agency, which decedent later ratified as a principal by delivering to the trustees a power of attorney with regard to her property interests in the trust.

Respondent argues that the facts of the present case bring it within the rationale of *City Bank Farmers Trust Co.* v. *Pedrick*, 168 Fed. (2d) 618. We can find no such similarity in the circumstances of the two cases that would justify this contention. In the *City Bank Farmers Trust Co.* case, the funds deposited in a bank were held by the trustees of a trust which was still active and, to terminate the trust by revocation and cause a distribution of the trust assets, it was necessary for the settlor to gain the consent of the trustee, whereas in the instant case at the time of decedent's death the trust had long been terminated and she was unconditionally entitled to one-half of the trust funds on deposit.

Respondent also asserts that our decision in *Estate of Elizabeth Hawxhurst Davey*, 10 T. C. 515, supports his contention. It is true that in the *Davey* case further steps had been taken toward a final distribution of the trust estate than in the instant case, namely, there had been a final accounting and release of the trustee. But, as in our case, there had been no transfer of the trust funds to the account of the claimant, for such funds were still held on deposit by the bank in a general account designated "Personal Trust Funds" at the time of the claimant's death. We feel that the decisive fact in both cases is that the trust had terminated and the decedent had an unconditional right to the trust funds held on deposit. We conclude here, as we said in the *Davey* case, that the funds to which decedent had a direct, enforceable claim "were held 'for' her ultimate use and benefit."

Therefore, we hold that the $31,559.06 representing one-half of the bank deposit is not includible in the gross estate of decedent by reason of section 863 (b).

*Issue 2.*—The next question for our determination is the value of 511½ shares of Phelps Estate, Inc., which formed a part of Irene de Guebriant's gross estate. Respondent determined that at the time of her death the value of these shares was $21,835.94, while petitioner contends that their value was $14,557.29. The fair market value determined by respondent is based entirely on the asset or net worth valuation of the stock at $42.69 per share. While petitioner accepts this figure as the correct asset value per share, yet the assertion is made that there were certain other relevant factors existing at the time decedent died which are not reflected in the net worth valuation and which serve to reduce the fair market value of the stock below $21,835.94.

Where stock of a family corporation has never been listed on an exchange or sold, valuation is extremely difficult. We recognize that stock in such a closed corporation is hard to sell, there being no other market except that afforded by the few other stockholders. *Wood* v. *United States*, 29 Fed. Supp. 853. Both parties agreed that under such circumstances all relevant factors affecting the value of the stock must be considered. Regulations 105, sec. 81.10–(c). Therefore, we are convinced that respondent erred in basing his appraisal of the stock wholly upon its asset or net worth valuation. We think that certain of the factors enumerated by petitioner do serve to reduce the fair market value of the 511½ shares below their net worth valuation.

First we note that the 511½ shares constituted a minority interest, approximating one-seventh of the total outstanding stock at the time of Irene de Guebriant's death. Respondent argues that the existence of a minority interest is not, by itself, sufficient grounds for holding that the fair market value of the stock was not equal to its asset value. But minority stock interests in a "closed" corporation might be worth less than the proportionate share of assets to which they attach. *Cravens* v. *Welch*, 10 Fed. Supp. 94, 95; *Mathilde B. Hooper*, 41 B. T. A. 114, 129; *Andrew B. C. Dohrmann*, 19 B. T. A. 507. Furthermore, by the terms of its certificate of incorporation and under section 116 of the New York Real Property Law, Phelps Estate, Inc., was severely limited in reinvestment of proceeds from the sale of its realty to assets proper for the investment of trust funds. This restriction made further investment of funds in the stock of Phelps Estate, Inc., unattractive to its stockholders at the time of Irene de Guebriant's death. Finally, the corporation required special licenses from the United States Government in May, 1945, to operate its normal busi-

ness, due to stock ownership by French and Belgian nationals. At that time it was impossible to tell when Government controls would be lifted. The resulting business uncertainty served to detract from the salability of the company's stock at the time of Irene de Guebriant's death.

In the light of these circumstances, we hold that the fair market value of the 511½ shares of Phelps Estate, Inc., was $16,378.70 on May 24, 1945.

*Issue 3.*—The final issue before us in this proceeding is whether certain bonds of the United States issued both before and after March 1, 1941, and certificates of indebtedness of the United States issued subsequent to March 1, 1941, plus accrued interest on all these obligations, should have been included in the gross estate of decedent. On brief respondent concedes that the amount of the bonds issued prior to March 1, 1941, and the interest accrued thereon were not includible in her gross estate. As to the includibility of bonds and certificates of indebtedness issued subsequent to March 1, 1941, plus accrued interest, the parties agree that at the time of her death Irene de Guebriant beneficially owned these obligations and that she was a nonresident alien not engaged in business in the United States. Respondent, nevertheless, contends that section 4 of the Victory Liberty Loan Act of March 3, 1919,[2] 31 United States Code, section 750, did not exclude such United States obligations and the interest thereon from the Federal estate tax. The very same question in regard to post-March 1, 1941, bonds and accrued interest thereon was before this Court in *Estate of Karl Jandorf*, 9 T. C. 338. After a thorough and comprehensive discussion of the issue, we there decided that the exemption provided for nonresident aliens not engaged in business in the United States applies to direct taxes on the principal or interest of United States bonds and does not apply to the Federal estate tax, which is an excise tax imposed upon the transfer of property at death. This view is supported by a long line of authority, including *Plummer* v. *Coler*, 178 U. S. 115; *Murdock* v. *Ward*, 178 U. S. 139; *Phipps* v. *Commissioner*, 91 Fed. (2d) 627; *Hamersley* v. *United States*, 16 Fed. Supp. 768; and *United States Trust Co. of New York* v. *Helvering*, 307 U. S. 57. We are aware that our decision was reversed by the Court of Appeals for the Second Circuit in *Jandorf* v. *Commissioner*,

---

[2] Sec. 4. That section 3 of the Fourth Liberty Bond Act is hereby amended to read as follows:

"Sec. 3. That, notwithstanding the provisions of the Second Liberty Bond Act or of the War Finance Corporation Act or of any other Act, bonds, notes and certificates of indebtedness of the United States and bonds of the War Finance Corporation shall, while beneficially owned by a nonresident alien individual, or a foreign corporation, partnership, or association, not engaged in business in the United States, be exempt both as to principal and interest from any and all taxation now or hereafter imposed by the United States, any State, or any of the possessions of the United States or by any local taxing authority."

171 Fed. (2d) 464, but, with due deference to its views, we remain convinced of the soundness of our position as expressed in our own decision therein and adhere to it in this proceeding. No distinction is suggested by either party between United States bonds and certificates of indebtedness so far as includibility in decendent's gross estate is concerned and we can find none. We therefore hold that the United States bonds and certificates of indebtedness issued after March 1, 1941, plus accrued interest thereon, were includible in decedent's gross estate. The amount of the deficiency in petitioner's estate tax will be recomputed under Rule 50.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

JOHNSON, *J.*, dissenting: In my view the reasoning of *Jandorf* v. *Commissioner* (C. A., 2d Cir., 1948), 171 Fed. (2d) 464, is convincing on the third issue herein. Therefore I respectfully dissent.

ARUNDELL, *J.*, agrees with this dissent.