ESTATE OF LESLEY DIANA WORTHINGTON, HARRY FRASER KER, IN HIS CAPACITY AS SUPERINTENDENT OF THE TRUSTEE DEPARTMENT OF BARCLAYS BANK (DC&O), AND AS SUCH THE NOMINEE OF SAID BANK, AND AS SUCH THE EXECUTOR TESTAMENTARY OF THE ESTATE OF LESLEY DIANA WORTHINGTON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 25975.   Promulgated July 25, 1952.

*Robert G. Starr, Esq.*, and *Walter J. Neylon, Esq.*, for the petitioner.
*Ellyne E. Strickland, Esq.*, for the respondent.

OPINION.

HILL, *Judge:* The petitioner did not include in the gross estate of Lesley Diana Worthington, a nonresident alien who was not engaged in business in the United States at the time of her death, certain cash in the amount of $80,522.36 on deposit with two New York bank-

ing firms in the account of Goodbody & Co. Goodbody & Co. was the agent of Marcus Goodbody, the executor of the estate of Lewis Nicholas Worthington, grandfather of the decedent.

The petitioner argues that the sum of $80,522.36 represented moneys deposited with the person carrying on the banking business by or for the decedent, a nonresident, not a citizen of the United States, who was not engaged in business in the United States at the time of her death and thus tax exempt under the provisions of section 863 (b)[1] of the Internal Revenue Code.

The respondent bases his position in opposition to the petitioner upon the technical ground that the decedent, at the time of her death, had no interest in the funds on deposit with Goodbody & Co. as such, and that her sole claim was a mere right to demand an accounting from the executor of the estate of Lewis Nicholas Worthington. Clearly, says the respondent, the decedent had no direct enforceable claim to the assets of her grandfather's estate at the time of her death. The basis of the respondent's argument is not clear. However, he probably takes this position as the result of a suit for a construction of the will of Lewis Nicholas Worthington brought by the executor of that estate in 1945.

As early as April 20, 1922, as evidenced by the agreement entered into by them, Emma Browne Worthington and Warwick and Percy Worthington were convinced that Emma Browne Worthington took a legal life estate under the will of Lewis Nicholas Worthington. Both Warwick and Percy predeceased Emma Browne Worthington. Warwick died intestate and without issue. Percy died testate survived by the decedent herein. As later found by Surrogate Delehanty, in his construction of the will in 1946, upon the death of Emma Browne Worthington the decedent was unconditionally entitled to one-half of the assets making up the estate of Lewis Nicholas Worthington. Surrogate Delehanty found that "Since his [Percy's] daughter had attained the age of twenty-one before she died she had become entitled to the fund in possession and so her estate representative may take it."

The fact that the executor of the estate of Lewis Nicholas Worthington had made no accounting and had not distributed the assets of Lewis Nicholas Worthington's estate at the time of the decedent's death in no way affected the unconditional right of the decedent to

---

[1] SEC. 863. PROPERTY WITHOUT THE UNITED STATES.

The following items shall not, for the purpose of this subchapter, be deemed property within the United States:

  *   *   *   *   *   *   *

(b) BANK DEPOSITS.—Any moneys deposited with any person carrying on the banking business, by or for a nonresident not a citizen of the United States who was not engaged in business in the United States at the time of his death.

the funds on deposit with Goodbody & Co.; hence, our holding that the $80,522.36 was money deposited "for" the decedent. *Estate of Mertyn S. Bradford-Martin*, 18 T.C. 544; *Estate of Irene de Guebriant*, 14 T. C. 611, reversed on another point, 186 F. 2d 307; *Estate of Anna Floto de Eissengarthen*, 10 T. C. 1277.

Respondent argues that the facts of this case bring it within the rationale of the *City Bank Farmers Trust Co.* v. *Pedrick*, 168 F. 2d 618. We can not agree. In the *City Bank Farmers Trust Co.* case the funds deposited in the bank were held by the trustees of a trust which was still active, and to terminate the trust by revocation and thus distribute the trust assets it was necessary for the settlor to gain the consent of the trustees, whereas in the instant case at the time of the decedent's death the estate of Lewis Nicholas Worthington was completely free from debts and in a state which would have permitted immediate distribution of the assets to the beneficiaries entitled to take thereunder. The fact that the executor of the estate of Lewis Nicholas Worthington may have had doubts as to the extent of the interest taken by the decedent or any other beneficiary under the estate which he was administering is of no importance. The legal realities of the situation had been sealed at the time of Lewis Nicholas Worthington's death. The fact that the will was not construed until 1946 is not sufficient to change the interest of the parties taken originally under the will.

The respondent also relies upon the case of *Estate of Elizabeth Hawxhurst Davey*, 10 T. C. 515, wherein the accounting was completed by the trustee and acknowledged by the decedent's execution of the receipt and release agreement immediately prior to her death. There we concluded that at the time of her death the decedent had a direct enforceable claim to the amount on deposit with the bank and that such funds were held for her ultimate use and benefit. The distinction sought by the respondent is nonexistent, for such is here the case. After the death of Emma Browne Worthington the decedent could have at any time brought suit to compel the executor of the estate of Lewis Nicholas Worthington to render an accounting and pay over to her her share as remainderman. We conclude, therefore, that as to the $80,522.36 on deposit with Goodbody & Co., the decedent had a direct and enforceable claim and that they were, therefore, funds on deposit "for" her ultimate use and benefit.

In addition to her one-half distributive interest in the assets belonging to the estate of her grandfather at the time of her death, the decedent also had a remainder interest in three-eights of two-thirds of one-half of the residue of her grandfather's estate, amounting to $11,208.02, which latter interest she had inherited from her uncle, Warwick, who died intestate and without issue. The petitioner reported in his estate tax return $6,820.08 of the decedent's three-eighths

of two-thirds of one-half share, representing the value of the decedent's interest in the estate of her uncle, with the explanation that the balance of the amount to be paid to the petitioner on account of such interest was believed to be nontaxable as representing cash on deposit and certain Federal Land Bank bonds.

The decedent's claim to the cash portion outlined above was uncontested, as was her right to the bonds. Warwick Worthington had died in 1931. The decedent's share in Warwick's estate was subject only to the expenses of administration. Now, as pointed out in the *Guebriant* case, the mere fact that these expenses might slightly reduce the total amount eventually transferred to the decedent does not detract from her unconditional right to the cash on deposit. We thus hold that the cash on deposit taken by the decedent from her uncle's estate is tax exempt under the provisions of section 863 (b).

In the custody of the executor of the estate of Lewis Nicholas Worthington were certain Federal Land Bank bonds, a part of the assets in which Emma Browne Worthington had a legal life estate and half of which on her death became the property of the decedent as remainderman, and a part as beneficiary of Warwick's intestacy. The petitioner argues that these bonds are exempt from the Federal estate tax by reason of section 4 of the Victory Liberty Loan Act of March 3, 1919, 40 Stat. 1311, providing as follows:

> Sec. 4. That section 3 of the Fourth Liberty Bond Act is hereby amended to read as follows:
>
> "Sec. 3. That, notwithstanding the provisions of the Second Liberty Bond Act or of the War Finance Corporation Act or of any other Act, bonds, notes, and certificates of indebtedness of the United States and bonds of the War Finance Corporation shall, while beneficially owned by a nonresident alien individual, or a foreign corporation, partnership, or association, not engaged in business in the United States, be exempt both as to principal and interest from any and all taxation now or hereafter imposed by the United States, any State, or any of the possessions of the United States or by any local taxing authority."

It will be noted that this section exempts from taxation *bonds, notes, and certificates of indebtedness of the United States and bonds of the War Finance Corporation* owned by a nonresident alien not engaged in business in the United States. And section 861 (c)[2] of the Internal Revenue Code, effective with respect to the estates of decedents dying

---

[2] SEC. 861. NET ESTATE.

*     *     *     *     *     *     *

(c) UNITED STATES BONDS.—For the purposes of subsection (a), the value of the gross estate (determined as provided in section 811) of a decedent who was not engaged in business in the United States at the time of his death—

(1) shall not include obligations issued by the United States prior to March 1, 1941; and

(2) shall include obligations issued by the United States on or after March 1, 1941, but only if the decedent died after the date of the enactment of the Revenue Act of 1951.

after February 10, 1939, excludes from the gross estates of such decedents "obligations issued by the United States." It thus becomes pertinent to inquire into the nature of the Federal Land Bank bonds.

Section 931 of Title 12 of the United States Code, Annotated, defines the Federal Land Bank bonds in the following language:

### EXEMPTION FROM TAXATION

§ 931. Federal land banks; national farm loan associations; mortgages and bonds as instrumentalities of Government

Every Federal land bank and every national farm loan association, including the capital and reserve or surplus therein and the income derived therefrom, shall be exempt from Federal, State, municipal, and local taxation, * * *. First mortgages executed to Federal land banks, or to joint stock land banks, and farm loan bonds issued under the provisions of this chapter, shall be deemed and held to be instrumentalities of the Government of the United States, and as such they and the income derived therefrom shall be exempt from Federal, State, municipal, and local taxation. July 17, 1916, c. 245, § 26, 39 Stat. 380.

A copy of a circular under which these bonds were offered to the public had the following to say:

SECURITY—These Consolidated Bonds are the joint and several obligations of the twelve Federal Land Banks. The law requires that these Bonds be issued only against collateral security of at least an equal principal amount of obligations of the United States Government, and/or first mortgages on farm properties, * * *.

\* \* \* \* \* \* \*

LEGAL FOR TRUST AND OTHER FUNDS—The Federal Farm Loan Act provides that the Bonds shall be lawful investments for all fiduciary and trust funds under the jurisdiction of the United States Government. The Bonds are eligible under the laws of a majority of the states for investment by savings banks, and are made eligible by statute for the investment of trust funds in more than twenty states.

ACCEPTABLE BY TREASURY—These Bonds are acceptable by the United States Treasury as security for Government deposits, including Postal Savings Funds.

\* \* \* \* \* \* \*

*Although these Bonds are not Government obligations, and are not guaranteed by the Government, they are the secured obligations* of Banks operating under Federal charter with Governmental supervision by the Farm Credit Administration.

The Supreme Court of the United States has upheld the constitutionality of the Act creating the Banks and the provision exempting their obligations from Federal, State, municipal and local taxation. The exemptions include exemption from surtaxes on income from the Bonds. *The transfer of the Bonds by inheritance or gift, etc., is, of course, subject to taxation under any applicable valid laws providing for the taxation of transfers of personal property.* [Emphasis added.]

In view of the fact that section 4 of the Victory Liberty Loan Act

provides only for the exemption of bonds, notes, and certificates of indebtedness of the United States and bonds of the War Finance Corporation, and section 861 (c) of the Internal Revenue Code exempts only "obligations issued by the United States," it appears at once that the Federal Land Bank bonds involved herein are not exempt under the provisions of that section, for the Federal Land Bank bonds are the obligations of the Federal Land Banks and not of the United States. Section 4 of the Victory Liberty Loan Act and section 861 of the Internal Revenue Code are exemption statutes and as such should be strictly construed. Only those securities falling within the plain definitions set forth in these sections may be considered to be exempt. The Federal Land Bank bonds do not qualify. The case of *Jandorf's Estate* v. *Commissioner*, 171 F. 2d 464, has no application to the facts before us for the bonds therein were United States obligations. We hold, therefore, that the respondent was correct in including within the gross estate of the decedent the Federal Land Bank bonds in controversy.

*Decision will be entered under Rule 50.*