The **BANK OF NEW YORK** as trustee of a trust created by Mary Viva Brooke by agreement dated March 12, 1903, Plaintiff,

v.

**UNITED STATES** of America, Defendant.

United States District Court
S. D. New York.
Nov. 26, 1957.

Emmet, Marvin & Martin, New York City (Grenville T. Emmet, Jr., New York City, of counsel), for plaintiff.

Paul W. Williams, U. S. Atty., for the Southern District of New York, New York City (Amos J. Peaslee, Jr., Asst. U. S. Atty., New York City, of counsel), for defendant.

RYAN, District Judge.

This suit has been filed by plaintiff bank, as trustee of an inter-vivos trust created by Mary Viva Brooke by agreement dated March 12, 1903. The settlor died on December 5, 1944; she was then a British subject, and a resident of England. Her last will was duly admitted to probate in England. No ancillary proceedings were had in the United

States. Plaintiff bank as trustee in possession of funds of the decedent filed a Federal Estate Tax Return on March 5, 1946. It reported a gross estate of $1,-466.83, which, credited with the specific exemption of $2,000, was subject to no tax. Subsequently, upon audit an additional assessment was made; this suit seeks recovery in full of the amount ultimately collected on this assessment alleging it to have been erroneously assessed and wrongfully collected.

Plaintiff bank and the Government moved, after answer, for summary judgment (Rule 56, F.R.Civ.P., 28 U.S.C.A.). A stipulation as to certain facts has been filed. We find, upon examination of the papers now before us, that the following facts are not in issue.

The trust was executed prior to the decedent's marriage. She subsequently married and bore two children—Cyril Brooke, born April 3, 1911 and Victor Butler Brooke, born October 22, 1919.

The trust was measured by decedent's life and the income was payable to her during her life. In so far as it is here material, it was provided that upon decedent's death the "trust shall cease and the principal of the fund held in trust hereunder, in case she shall leave children, or issue of deceased children her surviving, shall pass absolutely to such child, children or issue of deceased children, and in such share or shares, as the party of the first part may by her last will and testament appoint and direct * * *".

At the date of decedent's death, December 5, 1944, the son Victor Butler was living, unmarried and without issue; the son Cyril had not been heard from for sometime, his whereabouts were unknown and he has not been heard of since that date.

The decedent by her last will, dated May 22, 1943, attempted to exercise a power of appointment over the remainder of the trust under the 1903 agreement. The will made specific reference to this trust. We are here concerned only with paragraph "3" by which she attempted to bequeath one-half of "the

capital of the said Trust Fund and also all accumulations of income and current income" to her son Victor Butler, and if dead in equal shares per capita to his surviving issue, if any; and the income of the other half to her son Cyril during his life and thereafter the remainder of this half to her son Victor Butler, and if dead in equal shares per capita to his surviving issue. The decedent also provided "that if my son Cyril of whom I have not heard for many years shall for a period of one year after my death fail to make his whereabouts known * * * and to claim the interest to which if living he would be entitled under the foregoing appointment he shall be deemed to have predeceased me * * *".

Following the death of the decedent, the plaintiff bank in 1946 filed suit in the Supreme Court of the State of New York, County of New York, for a judicial settlement of its account of the trust and for a construction of the trust and a direction as to whom the corpus of the trust should be paid. It was in that suit by judgment entered on August 12, 1948, adjudged that Cyril Brooke had predeceased his mother, Mary Viva Brooke, the decedent herein, that Victor Butler Brooke was the sole remainderman of the trust, and that the entire principal of the trust was payable to him absolutely and free of any trust.

The decedent, prior to her death, also had established a trust which was administered in England. A proceeding was filed in Her Majesty's High Court of Justice, Chancery Division, London, England, following decedent's death for the judicial settlement of the account of the trustees of this trust. Here, there was entered on April 16, 1948 a judgment that Cyril Brooke did not survive his mother, Mary Viva Brooke.

With these facts undisputed, the Court took under advisement the motions made by both plaintiff and defendant for summary judgment. It appeared that a factual issue was presented as to whether the son, Cyril, had predeceased his mother, the decedent herein. With the purpose of disposing of this issue without

formal trial, the Court availed itself of the procedure outlined in Rule 56(d) and interrogated counsel. As a result, and with the cooperation of counsel, a formal trial was waived and not made necessary as to this factual issue.

It was stipulated that the plaintiff bank might submit to the Court as evidence herein the four depositions of witnesses which were received in evidence by the Supreme Court of the State of New York in the proceedings instituted in that Court by the plaintiff bank; and, as to these witnesses, it was further stipulated that if they were called on the trial of this suit they would testify that they had heard nothing from Cyril Brooke since the date of the depositions. There was reserved, however, to the Government the right to object to these depositions and this testimony, solely upon the ground that it was immaterial and irrelevant; that there is no presumption of death applicable in this suit; that the evidence is insufficient in law and fact to raise any such presumption; and that the depositions and testimony have no probative value to establish the death of Cyril Brooke. The statement was made by Government counsel upon interrogation by the Court that it had no direct evidence and could offer none at a trial to show that Cyril Brooke had been heard from since the last date testified to in these depositions.

It appears then that the one factual issue present is whether Cyril Brooke was living at the date of his mother's death on December 5, 1944, and that as to this issue all the available evidence has been received by stipulation.

. The four depositions received in evidence on these motions are of Victor Butler Brooke, Henry Thomas Wallace Bidwell, Francis Alexander Johnston and William Ernest Crabtree White.

Victor Butler Brooke whose deposition was taken on May 21st, 1947, testified that:

He was then 27 years of age; that he resided in Gloucester, England; that he was the son of Mary Viva Brooke; that there were two children, the issue of his parents, an elder brother Cyril and himself; that his father had been dead 22 or 23 years; that there were no other children; that his mother had died testate on December 5th, 1944 at Oxford; that "I can't remember when and where I last saw my brother, Cyril Brooke. I think it may have been when I was about 15 years of age, but I am by no means certain"; that he did not know where his brother then resided; that he could not remember when he last heard from his brother; that his mother had told him that Cyril was about 8 years older than he; that to his knowledge Cyril was not married; that he did not know what his brother's business was; that he had been told that "after leaving Oxford he was going into the church, i.e. going for Holy Orders in the Church of England, but he abandoned that"; that he had not heard from his brother Cyril since his mother's death and had no information as to his whereabouts; that he made no inquiries to ascertain the whereabouts of his brother, that he had no information as to whether he is alive or dead and does not know any person who does have such information.

Henry Thomas Wallace Bidwell, whose deposition was also taken on May 21, 1947, testified that:

He was an officer of the Royal Bank of Scotland one of the executors named in the last will of Mary Viva Brooke; that Cyril Brooke had not made any claim to his mother's estate and had not communicated with the Royal Bank; that the firm of Foyer, White & Prescott, solicitors, had been retained by the Royal Bank to make inquiries concerning the whereabouts of Cyril Brooke and that they had done so.

Francis Alexander Johnston, another of the executors, whose deposition was taken on June 17, 1947, gave testimony which added nothing to that of the other witnesses.

William Ernest Crabtree White, whose deposition was taken on May 21, 1947, testified that:

He was of the firm of Foyer, White and Prescott, solicitors for the Royal Bank, and that from November, 1943 through August, 1945 his firm had made efforts to locate Cyril Brooke and to obtain information as to his whereabouts. A detailed record of these efforts and their results is annexed to his testimony; it reveals that Lady Wrench, an aunt of Cyril Brooke had last heard from him by postcard, dated April 28, 1937 and postmarked "Winnipeg" reading:

"Winnipeg-Manitoba-Going East: don't write till you hear from me again. J.H.";

that she had later sent him a pair of socks which had been redirected from Vancouver to Elk Falls, Camp 4, Campbell River and then back to Vancouver and returned to her marked not called for; that Cyril Brooke had often written Lady Wrench from Vancouver, and the only address given was the Post Office and that he had assumed the name of Jack Hood; inquiries made in Vancouver as to marriage, death or hospitalization of Cyril Brooke and Jack Hood revealed nothing, advertisement in a newspaper-unclaimed-money column on January 5th, 1947 was unproductive, as were inquiries at a college Cyril Brooke attended and of the armed services.

From these depositions, it appears established that Cyril Brooke was last heard of on April 28, 1937, that diligent inquiry was made, without result, to ascertain whether he was alive or dead, and that there are no facts or circumstances which reasonably account for him not being heard of by those with whom he might be expected to communicate.

■ In view of our holding subsequently expressed that whether Cyril Brooke was alive at the time of his mother's death is essential to a determination of whether the trust fund is includible in the taxable estate, the objection of the Government to the receipt of these depositions as evidence is overruled.

Significant is his absence following the death of his mother, his failure to claim the bequest made to him, and the fact that up to the present there is no word of his whereabouts.

■ Weight too must be given to the statement of the decedent in her will, dated in 1943, that she had not heard from her son Cyril for many years (cf. Wigmore on Evidence, Third Edition, § 1482).

■ The judgments entered both in New York and in England are competent evidence. Although not res judicata in so far as the Government is concerned, the judgments are part of the historical record of the disappearance of Cyril Brooke and of the efforts to locate him.

■ Upon the evidence, I find that Cyril Brooke is now dead and because of the circumstances under which his aunt last heard from him in April, 1937 I find that he died shortly after that date and in any event prior to the death of his mother on December 5, 1944, more than seven years later.

In the record of the tax proceedings which give rise to this suit, we have noted that the plaintiff-bank as trustee on March 4, 1946 filed a return reporting a gross estate of $1,466.83, on which no tax was paid. This was income accrued amounting to $600.88, and part interests in two mortgages, $548.68 and $317.27 which were apportioned to income.

The audit of the return resulted in a determination of deficiency in tax in the amount of $26,345.59; this resulted from an audit inclusion of the entire principal of the trust of $114,709.94 (this valuation is not here in dispute) and $4,641.85 which was the accumulated trust income which had been collected by the trustee up to the date of death. Plaintiff-bank paid this deficiency assessment of $26,-345.59 and $2,949.88 interest accrued on this sum making a total payment of $28,386.47. It duly filed on June 19, 1950 a claim for refund of this entire amount.

The claim for refund was allowed by the Commissioner of Internal Revenue

to the extent of $9,424.15 with interest and this suit was thereafter duly filed by the plaintiff-bank to recover the balance of $18,962.32 and interest thereon.

The corpus of the trust included, in addition to cash, interest in realty, mortgages, stocks and corporate bonds, the following bonds:

(From Schedule G, of letter of assessment)

| | | | | |
|---|---|---|---|---|
| Item 3 – $7,500. | Bond Twelve Federal Land Banks | | | |
| | | Consol. Farm 3-¼%, 5/1/55 | $ 7,586.71 |
| 5 – $6,000. | U.S.A. | Treasury 2-¾%, 9/1/47 | 6,105.00 |
| 6 – $7,300. | U.S.A. | Treasury 2-½%, 9/15/52 | 7,817.84 |
| 7 – $4,000. | U.S.A. | Treasury 2-½%, 12/15/69 | 4,003.33 |
| | | | $25,512.88 |

The Commissioner re-determined the amount of allowable refund on plaintiff's claim by holding that the bonds listed as Items 3, 5 and 6 above totalling $21,509.55 were not includible in the taxable estate. He ruled, however, that the bonds listed in Item 7 were includible under Section 81.13 of the Estate Tax Regulations 105, because they were issued after March 1, 1941.

The Government now concedes that the Commissioner was in error in holding the U.S.A. Treasury Bonds listed as Item 7 includible (Jandorf's Estate v. Commissioner of Internal Revenue, 2 Cir., 1948, 171 F.2d 464; Estate of Fredericka Loewenstein, 17 T.C. 60; cf. Section 604, Revenue Act of 1951 amending Section 861 Internal Revenue Code of 1939, 26 U.S.C.A. § 861; Estate of Mertyn S. Bradford-Martin 18 T.C. 544).

But, while so conceding, the Government contends that the Commissioner was in error when ruling that the bonds of

Item 3—$7,500. Bond Twelve Federal Land Banks Consol. Farm 3¼%, 5/1/55 were not includible in the taxable estate (Estate of Worthington, 1952, 18 T.C. 796. To the extent that the refund paid plaintiff-bank was based upon this erroneous ruling, the Government has pleaded a set-off and counterclaim. Since, however, this counterclaim was not asserted until January 15, 1957, the Government frankly admits that no affirmative recovery may be had (Section 3746 (b) of the 1939 Code, 26 U.S.C.A. § 3746 (b)). It does press this claim as a set-off against any relief which may be granted the plaintiff-bank.

We have then, upon the undisputed and found facts, the following questions of law:

1. Was the corpus or principal of the trust includible in the taxable estate?

2. Was the undisbursed accumulated income of $4,641.85 includible in the taxable estate?

3. May the Government set-off against any recovery of plaintiff-bank the amount of the tax originally assessed on the Twelve Federal Land Banks Consol. Farm bonds, which was erroneously refunded by the Commissioner?

We shall in turn separately consider each of these questions.

1. I conclude that the corpus or principal of the trust was not includible in the taxable estate.

The power of appointment, reserved by the decedent settlor in the 1903 trust agreement, over the remainder was dry and completely inoperative. Upon the death of the settlor and with only the one son, Victor Butler Brooke, and with no issue of deceased children her surviving, the remainder was vested completely and absolutely in Victor Brooke

under the provisions of the trust agreement. The power was conditioned upon the happening of events which did not occur, to wit: that she should be survived by more than one child, or issue of a child who had predeceased her, or that she should be survived by no issue.

■ Disposition of the remainder of the trust, at the date of decedent's death, was fixed, settled and definitely determined by the provisions of the trust agreement. It was not within the exercise of a power reserved to the decedent settlor to alter, amend, revoke or terminate. The trust was not therefore taxable within the provisions of Section 811 (d) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 811(d) (Jennings v. Smith, 2 Cir., 1947, 161 F.2d 74, 77), and it was not properly includible in the taxable estate.

The statute makes includible only those trusts "where the enjoyment thereof was subject at the date of his (her) death to any change through the exercise of a power * * * by the decedent * * *" (Section 811(d)(1), Internal Revenue Code of 1939). The power was here "conditioned upon an event which had not occurred before the settlor's death" (Jennings v. Smith, supra, 161 F.2d at page 77).

As the decedent died with only one surviving child and no issue of deceased children "the power never became effective and was not taxable". Footnote 4, Hollander, Executor, etc. v. United States, 2 Cir., 248 F.2d 247, 248.

■ *2.* I conclude that the accumulated income in the hands of the trustee should be excluded from the taxable estate.

The trust agreement provided that the plaintiff-bank after deducting all proper charges against income should "pay the same over in quarterly payments to the" decedent "for and during the term of her life" and "upon her separate receipt". The remainder clause of the agreement providing that upon the death of decedent the trust should cease, speaks only of "the principal of the fund held in trust hereunder".

It appears that the income was remitted to the decedent in quarterly payments governed as to amount by an estimate of the net income and of tax and other expenses chargeable to income. Thus, during the administration of the trust, the quarterly payments fell short of the actual amounts which became due and payable to the decedent and which it was her lawful right to receive. At various times this accumulation was remitted to the decedent; however, at the date of death of the deceent there was with plaintiff-bank the sum of $4,641.85 in accumulated and unremitted income.

It is the contention of the plaintiff-bank that this was money on deposit "by or for a nonresident not a citizen of the United States who was not engaged in business in the United States" at the time of death, within the meaning of Section 863(b) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 863(b). It is undisputed that decedent was a non-resident and not a citizen of the United States and was not engaged in business in the United States at the time of death.

This accumulated income was not "hedged about with restrictions"; the decedent could withdraw it any time she elected so to do "without resort to negotiation at least, and after that to a court"; and it is this which makes "a vital difference" and brings this fund within the exemption granted by the statute (quotations from L. Hand, J., in City Bank Farmers Trust Co. v. Pedrick, 2 Cir., 1948, 168 F.2d 618, 620).

*3.* In view of the conclusion that no part of the principal of the trust is includible in the taxable estate, it is not necessary to determine the Government's right to set-off.

Plaintiff's motion is granted; Government's motion denied; let judgment be settled on notice.